526 A.2d 1192

**William C. GREENE, Appellant,**

**v.**

**OLIVER REALTY, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1986.

Filed March 30, 1987.

Reargument Denied June 12, 1987.

536

Gary M. Davis, Pittsburgh, for appellant.

Robert J. Marino, Pittsburgh, for appellee.

Before CIRILLO, President Judge, ROWLEY and POPOVICH, JJ.

CIRILLO, President Judge:

This is an appeal from a grant of summary judgment by the Court of Common Pleas of Allegheny County. We reverse and remand.

Appellant, William Greene began working for Grant Building, Inc. in 1959. Greene allegedly agreed to work at a pay rate below union scale in exchange for a promise that Grant would employ him "for life". In 1975, appellee Oliver Realty, Inc. took over management of Grant Building but Oliver's president assured former Grant employees that existing employment contracts would be honored. During that same year Greene explained the terms of his agreement to an Oliver Realty supervisor. The supervisor stated that he would look into the matter but never got back to Greene. The trial court found that Oliver had impliedly adopted the oral contract between Greene and Grant Building. In 1983, Greene was laid off and he brought this action for breach of contract. The trial court ruled that under Pennsylvania law a contract "for life" is a contract at will. The court also held that a contract at will may become a contract for a reasonable time if it is supported by sufficient additional consideration other than the employee's services. The court stated that there was no such consideration in this case. It found that Greene worked for subunion wages in order to avoid layoff not in exchange for lifetime employment. It also held that even if sufficient additional consideration was present, the period of 1975 to 1982 constituted a reasonable time. Therefore, there was no breach of the contract and the court granted Oliver's motion for summary judgment.

Appellant presents three issues for our review: (1) whether the issue of sufficient additional consideration should go to the jury; (2) whether the issue of "reasonable" period of time should go to the jury; and (3) whether Greene is entitled to reach the jury on the issue of equitable estoppel. Because of our disposition of this matter it is unnecessary for us to consider these issues separately.

██ Contemporary contract law generally provides that a contract is enforceable when the parties reach mutual agreement, exchange consideration and have outlined the terms of their bargain with sufficient clarity. *See Com. Dept. of Transp. v. First Penna. Bank,* 77 Pa.Commw. 551, 466 A.2d 753 (1983). An agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy. *See Linnet v. Hitchcock,* 324 Pa.Super. 209, 214, 471 A.2d 537, 540 (1984).

██ If an essential term is left out of the agreement, the law will not invalidate the contract but will include a reasonable term. For instance, if the parties do not specify price, a court will impose a reasonable price which will usually be the item's market value. *See* Murray, *Murray on Contracts* 48 (1974). *See also Kuss Mach. Tool & Die Co. v. El-Tronics Inc.,* 393 Pa. 353, 143 A.2d 38 (1958). However, if the parties include the term but have expressed their intention ambiguously, the court will not impose a reasonable term and the contract may fail for indefiniteness. *Id.* 143 A.2d at 40. A court will not attempt to fix contractual terms which are inconsistent with the intent of the parties. That is because the paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. *See Burns Mfg. Co., Inc. v. Boehm,* 467 Pa. 307, 313, 356 A.2d 763, 766 (1976). When the language of a written contract is clear and unequivocal, its meaning must be determined by its contents alone. *Mears, Inc. v. National Basic Sensors,* 337 Pa.Super. 284, 289, 486 A.2d 1335, 1338 (1984). Only if the words used are ambiguous may a court examine the surrounding circumstances to ascertain the intent of the parties. *Kennedy v. Erkman,* 389 Pa. 651, 655, 133 A.2d 550, 552 (1957). However, in cases involving oral contracts the complete agreement is not recorded. Therefore, in that situation, courts must always examine the surrounding circumstances to determine the parties intent. *Westinghouse Elec. Co. v. Murphy, Inc.,* 425 Pa. 166, 171–72, 228 A.2d 656, 659 (1967). Because

courts wish to effectuate the parties intentions, they may enforce an indefinite contract if its terms have become definite as the result of partial performance. One or both parties may perform in such a way as to make definite that which was previously unclear. Murray, *Contracts* at 51–52. *See also Com. Dept. of Transp. v. Mosites Const. Co.,* 90 Pa.Commw. 33, 494 A.2d 41 (1985).

Traditional contract law distinguished between contracts involving two promises which were called bilateral and contracts involving only one promise which were called unilateral. Murray, *Contracts* at 9. A bilateral contract is created when one party promises to do or forbear from doing something in exchange for the other party's promise to do or forbear from doing something else. In a unilateral contract there is only one promise. It is formed when one party makes a promise in exchange for the other person's act or performance. *Id.* at 10. Mutuality of obligation means that both parties are under an obligation to perform their promises. It is often stated that a contract is unenforceable if there is no such mutuality but this principle is inapplicable to unilateral contracts. *See Darlington v. General Elec.,* 350 Pa.Super. 183, 203, 205, 504 A.2d 306, 316, 317 (1986). If A promises B $100 if B walks across the Brooklyn Bridge, a unilateral contract will be formed if B does as A requests. It is a unilateral contract because it consists of a promise in exchange for a performance. However, the contract is not formed until B walks across the bridge. At that time, A owes B $100 even though B no longer has any obligation to A. A unilateral contract is formed by the very act which constitutes the offeree's performance. Therefore, mutuality of obligation will never exist in such a situation. By the time the contract is formed, only the offeror will remain obligated. The offeree will already have performed. This is why the Restatement provides that: "If the requirement of consideration is met, there is no additional requirement of ... (c) 'mutuality of obligation.'" Restatement of Contracts (Second) § 79 (1981).

■ The other problem with mutuality of obligation is that the doctrine is often confused and misinterpreted even in cases concerning bilateral contracts. Courts sometimes refuse to enforce a single promise made in exchange for several promises. *See* Perritt, *Employee Dismissal Law and Practice*, 47 (1984). They require that each promise must be supported by a separate consideration. This is usually done in the name of mutuality of obligation. However, if person A promises to do something in exchange for person B's promise to do three things, there is mutuality of obligation. A is obligated to do as he promised, as is B, though B's obligation entails three promises. Both parties are obligated, so mutuality of obligation is present. However, B's obligation appears greater than A's. Courts sometimes decline to force B to perform because of this difference in obligation. These courts are implicitly requiring that both parties to a contract must have concurrent or equivalent obligations. If one party is "more" obligated than another, the contract fails. This result is incorrect because consideration may be any bargained for exchange. *Com. Dept. of Transp. v. First National Bank, N.A.*, 77 Pa.Commw. 551, 466 A.2d 753 (1983). If B desired A's promise sufficiently to make three promises of his own, there is no reason why the law should not enforce the arrangement. As in any other contract, each party bargained for what he wanted. Modern contract law recognizes that, "If the requirement of consideration is met, there is no additional requirement of ... (b) equivalence in the values exchanged...." Restatement of Contracts (Second) § 79 (1981). It then follows logically that, "[s]ince consideration is not required to be adequate in value (see § 79), two or more promises may be binding even though made for the price of one." *Id.* at § 80 comment a. *See Thomas v. Thomas Flexible Coupling Co.*, 353 Pa. 591, 598, 46 A.2d 212, 216 (1946). Those courts which invalidated agreements like the one described above did so in the name of mutuality of obligation. But, as noted above, mutuality of obligation is present in this type of situation and equivalency of obligation is not required in contract

law. *See* Restatement § 79. Therefore, modern contract law recognizes such agreements as valid and enforceable.

However, there is one area of contract law which is strikingly idiosyncratic. That is the law of employment contracts. It has developed contrary to all of the standard, modern contract principles discussed above. If the parties to an employment contract do not specify the duration of the contract, a court will not imply a reasonable duration. The contract is considered terminable at will. If the parties contract for "lifetime" employment, many courts will refuse to enforce their bargain even if their intentions are clear. Even if the agreement is oral, courts refuse to consider the surrounding circumstances. Though mutuality of obligation is a discredited notion, it is often required in the employment context, even when the employment agreement is a unilateral contract. Also, courts routinely refuse to enforce employment contracts if they entail a single promise made in exchange for several promises. In reaching these results, courts rely on anachronistic theories which they would never apply in other fields of contract law. The strong resistance of employment law to modern contract doctrine is a testament to the influence of a uniquely American legal tradition: the at-will presumption.

A thorough analysis of this area of law demonstrates the continuing importance of this presumption. It is far from the antiquated and outmoded principle that its critics claim. The presumption is attacked because its theoretical underpinnings are inadequately understood. The same is true of our court system's reluctance to enforce lifetime employment agreements. The reasons given for this reluctance are so obviously insufficient that observers have concluded that there are no good reasons for the policy and such contracts should be readily enforceable. We agree that current rules of construction are too artificial. However, we also believe that there are good reasons why courts should be very careful before they enforce a lifetime employment contract.

 Despite the principle of contractual interpretation that courts must ascertain and give effect to the parties' intent, employment law creates a presumption which may be contrary to that intent. An employment agreement is presumptively terminable at will by either party. The employee may leave the job for any or no reason or the employer may terminate the employee for any cause or no cause. *Darlington v. General Elec.*, 350 Pa.Super. 183, 188, 504 A.2d 306, 309 (1986). The party claiming that an agreement is for a definite period has the burden of proving that fact. *Geary v. United States Steel Corp.*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974). This requirement is satisfied by clear proof that the parties contracted for a specific duration. *See Maloney v. Madrid Motor Corp.*, 385 Pa. 224, 228–29, 122 A.2d 694, 696 (1956). When it is proven that the contract specified a definite period, the employee may not be terminated during that period unless the employer has "just cause". *Darlington*, 350 Pa.Super. at 204, 504 A.2d at 316. However, the presumption is strong enough that it usually is not rebutted by an agreement which specifies that it is for "permanent" or "lifetime" employment. For various reasons, the intent of the parties is often ignored in such a situation in deference to the at-will presumption. But, if such contracts was enforceable, the employee could not be terminated without cause.

 A presumption is a procedural device which shifts the burden of persuasion. *Bixler v. Hoverter*, 89 Pa.Commw. 88, 91, 491 A.2d 958, 959, (1985). A presumption of law compels the fact finder to reach a particular conclusion in the absence of evidence to the contrary. *Stine v. Borst*, 205 Pa.Super. 46, 53, 205 A.2d 650, 654, (1964). Presumptions arise over the course of time through experience and common observation. When experience shows that a connection exists between things so that one usually follows the other, this connection may become the foundation for a legal presumption. *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 504, 173 A. 644 (1934). A legal

presumption may also be based upon procedural expediency or public policy. *See* Chadbourn & Wigmore, *Wigmore on Evidence* 287–91 (1981).

The at-will presumption is based on an uneasy marriage of procedure, policy and experience. Our review of the relevant cases and literature reveals that there are five policies underlying the presumption: (1) The policy of freedom of contract; (2) the need for mutuality of obligation; (3) common experience that it usually effectuates the intent of the parties; (4) as a procedural protection against meritless but vexatious lawsuits; and (5) fairness and equity.

English courts traditionally held that a contract of employment for an indefinite term was presumed to be a contract for one year. *Darlington*, 350 Pa.Super. at 189–90, 504 A.2d at 309. However, American courts of the late 1800's rejected this view. These courts adopted the doctrine of freedom of contract. This principle implies that the terms of an economic relationship should be determined entirely by the parties. Therefore, no presumptions affecting the relationship should be imposed by law. It may now seem ironic, but the doctrine of at-will employment was originally based upon a rejection of artificial presumptions. *See* Perritt, *Employee Law* at 5.

However, in the late 1800's and early 1900's, "commerce was King [and] laws were tailored to facilitate business.... Thus, laws ... largely left business decisions to businessmen." *Darlington*, 350 Pa.Superior Ct. at 189–90, 504 A.2d at 309. As one commentator has written, "the prevailing economic theories of the day exhalted the role of market forces...." Perritt, *Employee Law* at 4. The at-will rule flourished in this atmosphere. It allowed businessmen unfettered discretion in hiring and firing. Employees were encouraged to sell their labor to the highest bidder and employers were free to hire and fire as they saw fit. It was believed that this state of affairs resulted in the greatest maximization of wealth to society. The doctrine was so appropriate for the pro-business temper of the times that it was soon accepted as a legal presumption by the vast

majority of American courts. Its basis was originally freedom of contract, but this was soon confused and contorted so that the rule's true foundation became freedom for employers to manage their businesses as they wished. *Id.* at 4–7.

By the early 1900's, the at-will presumption was as inflexible and artificial as the one year rule it had replaced. The presumption was originally rebuttable if the employee produced evidence sufficient to establish an implied-in-fact contract. But it gradually developed into a substantive limitation whereby the employment relationship was conclusively at-will. Courts refused to enforce informal employment contracts even though such a refusal might be contrary to the parties' actual intent. Perritt, *Employee Law* at 6. As previously discussed, freedom of contract implies that the parties are free to determine the terms of their relationship. The at-will presumption was supposedly based upon this principle. Yet, courts formalistically enforced the rule, allowing it to become a substantive limitation upon the parties' freedom to contract. The presumption actually developed contrary to the very principle upon which it was based.

Therefore, the policy of freedom of contract encourages courts to effectuate the intent of the parties. To the extent that legal rules stymie this intent, they also obstruct freedom of contract. The right of competent adults to contract is the lifeblood of our free enterprise system. Voluntary agreements are the foundation of our society's freedom and prosperity. If two parties desire to contract "for life", courts should be encouraged to enforce their agreement. Of course, the at-will presumption may still be a sound legal rule. It is only when it is allowed to conclusively foreclose proof of the parties intent that it becomes an obstacle to freedom of contract. Also, the rule is supported by valid procedural, practical and equitable concerns.

One rationale for the rule which is illogical and undeserving of perpetuation is that of mutuality of obligation. Courts have often held that mutuality of obligation is

lacking in the employment context, particularly in regard to contracts for permanent employment. *See, e.g., Alabama Mills, Inc. v. Smith,* 237 Ala. 296, 186 So. 699 (1939); *Pitcher v. United Oil & Gas Syndicate, Inc.,* 174 La. 66, 139 So. 760 (1932); *Roxana Petroleum Co. v. Rice,* 109 Okl. 161, 235 P. 502 (1924); *Louisville & N.R. Co. v. Cox,* 145 Ky. 667, 141 S.W. 389 (1911). Several reasons have been proffered for this conclusion: (1) there is no consideration for the employer's promise; (2) only the employer is obligated; and (3) the employer is obligated for a longer period than the employee. None of these justifications has merit.

In order for a promise to be binding, it must usually be made in exchange for consideration. However, consideration may be any bargained for benefit or detriment. *Estate of Beck,* 489 Pa. 276, 282, 414 A.2d 65, 68 (1980). An employer is free to promise lifetime employment to someone in exchange for that person coming to work for the employer. Once that person accepts and starts work, the employer has received exactly what he bargained for. The employee has performed the desired act. That act is the consideration for the employer's promise and their agreement is a unilateral contract. It is irrelevant that the employee's services are also consideration for his salary. Modern contract law recognizes that consideration may be a single act exchanged for several promises. *Richter v. Mozenter,* 356 Pa. 650, 654, 53 A.2d 76, 78 (1947). *See Restatement Contracts (Second)* § 79 (1981). Therefore, an employee is free to sell his services in exchange for wages *and* a promise of lifetime employment.

Once the employee begins work, the employer may be the only party obligated, but that is standard in situations involving a unilateral contract. The promisor has requested a performance as the price of his promise. Once he receives that performance, it would defy all notions of equity to allow him to avoid his obligation by claiming that the promisee is no longer obligated. He is no longer obligated because he has already performed the agreed upon acts. As previously discussed, this is the reason that mutuality of

obligation is inapplicable to unilateral contracts. *See Restatement* § 79.

The employer and employee need not be obligated for coextensive periods of time. The law does not require equivalency of consideration. Therefore, the employee may be bound for one period of time though the employer is bound for much longer.

The at-will presumption, like most other legal presumptions, is also based upon common experience. In the vast majority of employer-employee relationships, both sides are silent about the expected duration of the employment agreement. The employee usually feels free to leave and take another job if it presents a more desireable opportunity. Similarly, the employer generally feels free to discharge the employee if he no longer wants his services. The at-will presumption is simply a legal recognition of the parties' normal expectations. In the vast majority of cases, it is consistent with the parties' intent. Therefore, it is procedurally expedient that the law recognizes it as a presumption. It is a waste of time and resources to require parties to re-prove time and again that which experience shows is normally true. It is much more efficient to recognize the fact in question as true and require the parties to demonstrate if exceptional circumstances are present. However, the court must allow the parties to demonstrate whether those exceptional circumstances do exist. Courts must not allow the at-will presumption to foreclose such proof. Equity demands that the parties to a contract receive that which they intended to exchange. *See Burns*, 467 Pa. at 313, 356 A.2d at 766 ("Rules of Construction serve the legitimate purpose of aiding courts in their quest to ascertain and give effect to the intention of the parties. . . . They are not meant to be applied as a substitute for that quest."). If courts allow the at-will rule to become a conclusive presumption then the parties are prevented from proving their actual intent. Courts must guard against this result. A presumption is a procedural tool to aid courts in carrying out their task. That task is doing justice. It is a terrible distortion of priorities to elevate concerns of efficiency over those of

equity. If at all possible, a court must effectuate the intent of the parties. Justice must always remain paramount.

The at-will presumption also provides another important procedural protection. If there were no such rule, any dismissed employee could file suit based on an alleged oral contract. The ensuing lawsuit would then hinge solely on credibility. We note that a jury is much more likely to be composed of employees as opposed to employers. We hope that it does not exhibit too cynical a view of humanity for us to be concerned that this might affect more than an occasional verdict. The law is replete with procedural rules designed to guard against the danger of prejudicial jury verdicts. The at-will presumption is such a rule. However, the presumption can be rebutted by clear evidence that the parties intended a contrary result. This is a sufficient safeguard. It balances the need to protect against prejudicial verdicts with the legal system's obligation to enforce the individual parties expectations. However, the danger of prejudicial verdicts is sufficiently strong to be of particular concern if an alleged "lifetime" contract is at issue. A contract for life is a heavy burden to impose upon an employer. Courts should be careful that when such a burden is imposed it is because that is what was contracted for and not because the jury was impassioned and sought to wreak vengeance. This danger is one of the reasons courts refuse to enforce such a contract if the only proof of its existence is that the parties exchanged promises. The parties may have used the words "permanently" or "for life" in an off-hand manner. These words are much too ambiguous to provide the sole basis for a jury's imposition of such a tremendous obligation. Courts must look to the surrounding circumstances to determine the parties intent. Of course, that is standard in cases involving oral contracts. *Westinghouse,* 425 Pa. at 171, 228 A.2d at 659.

Another policy supporting continued recognition of the at-will presumption is that of simple fairness. This may surprise those commentators who complain that the rule is "antiquated" and "barbaric" because it leaves the "poor"

employee without legal protection. *See* Decker, *At-Will Employment in Pennsylvania—A Proposal For Its Abolition and Statutory Regulation,* 87 Dickinson L.Rev. 477 (1983). But, a cursory analysis demonstrates that the situation is not as one-sided as it may at first appear.

We have already discussed the situation where an employer offers an employee employment for a definite period in exchange for the employee merely agreeing to take the job. The employer is bound to provide a job for the whole of the agreed upon period. But, the employee is free to leave the job at any time. However, a scenario which is much more likely to occur is where the employer and employee both agree that the employment relation is to last for a definite period. Both parties are then bound for that period. If the employer fires the employee, he can sue his former boss and recover damages. However, if the employee quits before the agreed upon period of time has expired, what recourse is available to the employer? If he sues the employee, he will have difficulty proving damages. He will need to show that the loss of this one employee caused his business to lose money. Even if the employer wins a judgment he would then have to enforce it. The old adage that you can not get blood from a stone is particularly apt in this situation. Most individuals do not have the resources to satisfy anything but the most meager judgment. Therefore, an aggrieved employee will probably have a legal remedy, but an aggrieved employer will not. This is a very inequitable result. A legal system loses all legitimacy if it deigns to treat one group more favorably than another. The law cannot pick and choose its favorites.

The at-will presumption is a partial response to this quandary. Absent the presumption, the law is naturally prone to favor the interests of the employee. The presumption may make it slightly more difficult for the employee to recover if he brings an action. But this merely serves as a partial redress of the unfair situation which would otherwise occur.

A lifetime contract is a tremendous obligation to impose upon an employer. Yet, it is very difficult to enforce any employment agreement against an employee. It is unfair to place an odious burden upon one party if the other party's actual obligation is negligible. Thus, fairness also dictates that courts should proceed with caution when dealing with alleged lifetime contracts.

Therefore, our review of the applicable policies demonstrates that the at-will presumption remains a sound legal rule. It provides a sensible balance of the relevant concerns. Most of the rule's underlying premises remain valid. But, courts must remain flexible and not allow the presumption to foreclose proof of the parties' intent. Though the rule is a necessary procedural safeguard, a court's primary task is to ascertain and enforce that intent. The presumption itself grew out of the doctrine of freedom of contract. This principle holds that the terms of the economic relationship should be determined by the parties and not by artificial rules of legal construction. If the presumption is used to frustrate the desires of the contracting parties, the rule is robbed of its logic and validity. Our review also shows that lifetime employment contracts are a tremendous burden. Courts should be very careful before enforcing them. However, if the intent of the parties is clear, then so is a court's obligation. It must enforce that intent.

However, in cases involving lifetime employment contracts, many courts ignore the parties' desires. In some jurisdictions, lifetime employment contracts are terminable at will unless these is proof of "sufficient additional consideration." *See cases collected* Annot., 60 A.L.R.3d 226, 237–40 (1974). *See also Darlington,* 350 Pa.Super. at 199–200, 504 A.2d at 314. The additional consideration which is required is something other than the employee's day to day services. It could be leaving another job, passing up a better opportunity or declining to sue, etc.

These courts require that "sufficient" additional consideration be present or they will not find the at-will presumption overcome in a case involving a permanent employment

contract. Courts require additional consideration because they find that permanent employment contracts are otherwise lacking in mutuality of obligation. In these jurisdictions, the presumption will not be rebutted even by strong, independent evidence that the parties intended the contract to last for life. Some courts hold that such agreements are too vague to be enforceable. *See* 60 A.L.R.3rd 226, 304–15 (1974). Unfortunately, they fail to explain how additional consideration clarifies matters.

Therefore, courts refuse to enforce lifetime employment agreements based on reasons of lack of mutuality and indefiniteness. This result has often been criticized as inconsistent and illogical. *See* Perritt, *Employee Law* at 151. We agree.

Under modern contract doctrine, an agreement does not fail for vagueness if the parties intended to form a contract and there is a reasonably certain basis for giving an appropriate remedy. *Linnet*, 324 Pa.Super. at 214, 471 A.2d at 540. The at-will presumption can only be overcome by clear evidence that the parties intended to contract for a definite period. *See Maloney*, 385 Pa. 224, 229, 122 A.2d 694, 696 (1956). Therefore, a litigant will only be able to reach the jury if he can clearly show that he and the defendant intended to form a contract. It is also easy enough for a court to fashion a remedy. Some courts have disagreed, questioning the details of such agreements. What is the rate of pay? The hours? The working conditions? These are some of the questions courts have posited. *See Green v. Medford Knitwear Mills*, 408 F.Supp. 577 (E.D.Pa.1976). However, they are easily answered. The employee will have partially performed prior to the alleged breach. An indefinite agreement may become definite by virtue of partial performance. *See* Murray, *Contracts* at 51–52. The employee's rate of pay, hours and working conditions will already have been determined. The partial performance which has already taken place provides the basis for the court's remedy. Because, lifetime employment contracts satisfy the *Linnet* court's two-part test they should not fail for indefiniteness.

Mutuality of obligation is a thoroughly discredited notion. As previously discussed, it is inapplicable to unilateral contracts. Any rule which purportedly derives its legitimacy from this principle is a rule deserving of a rapid interment.

However, other courts utilize a more flexible approach. These courts view the presence of such consideration as proof that the parties intended the employment relation to be more binding than the standard terminable at will agreement. These courts view additional consideration as a factor to consider in determining the parties intent but not as a rigid requirement. Under this view, the at-will presumption may theoretically be overcome by clear evidence even if that evidence does not include proof of additional consideration. However, such proof is helpful because it is persuasive in rebutting the presumption. *See Eilen v. Tappin's Inc.*, 16 N.J.Super. 53, 83 A.2d 817 (1951). As the *Darlington* court explained:

"the term 'consideration' is not used here as it is in the usual contractual context to signify a validation device. The term is used, rather, more as an interpretation device. When 'sufficient additional consideration' is present, courts infer that the parties intended that the contract will not be terminable at-will."

*Darlington*, 350 Pa.Super. at 199–200, 504 A.2d at 314.

However, the exchange of such consideration is only one of many potential factors which a court should consider. In *Darlington*, the court also quoted our Supreme Court's holding in *Price v. Confair*, 366 Pa. 538, 79 A.2d 224 (1951).

The court stated:

"[I]t is the intention of the parties which is the ultimate guide, and in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject matter of the agreement."

*Id.*, 366 Pa. at 542, 79 A.2d at 226.

Under this more flexible approach, additional consideration is merely considered indicative of the parties' intent. If

the parties exchanged "extra" consideration, it is logical that they expected their relationship to be more lasting than the usual employment agreement. However, it is very possible that the parties so intended but did not exchange additional consideration. The surrounding circumstances and the parties' own expressions may still provide clear evidence of that intent. If so, courts must enforce the parties' desired bargain. Otherwise, they are using an evidentiary rule, the at-will presumption, to defeat the parties' intent. As already discussed, this is directly contrary to the doctrine of freedom of contract.

Pennsylvania courts have traditionally followed the flexible approach, recognizing that the paramount concern is the intention of the parties.

In *Lubrecht v. Laurel Stripping Company*, 387 Pa. 393, 127 A.2d 687 (1956), the Court repeated the maxim that an employment contract is presumptively terminable at will. The court stated that this presumption may be overcome by proof of the parties' intent based on the "surrounding circumstances." *Id.*, 387 Pa. at 396, 127 A.2d at 690. The Court made no mention of additional consideration.

In *Lightcap v. Keaggy*, 128 Pa.Super. 348, 194 A. 347 (1937), the court refused to enforce an agreement for lifetime employment because of indefiniteness. The court stated that it was unable to ascertain the parties' intent with sufficient clarity. *Id.*, 128 Pa.Superior Ct. at 356, 194 A. at 350. The plaintiff had been promised "suitable employment" but the court questioned "[w]hat is suitable employment?" *Id.* The court also questioned the scale of pay, hours of work and the working conditions since none of these were specified. Because these details were not spelled out, the court refused to enforce the agreement. However, modern contract doctrine is very different from that of 1937. Vague and indefinite agreements are routinely enforced as long as courts are able to supply "reasonable" terms. Courts are more willing to supply such terms if the parties have already partially performed their obligations. If the *Lightcap* case were construed by a modern

court, it would look to the parties' practice prior to the alleged breach. That practice would supply the rate of pay, hours of work and working conditions. Although the *Lightcap* court refused to enforce a contract for lifetime employment, its refusal is of little precedential value because the result was based on principles of contract law which are now outdated. The court did state that use of the word "permanent" is not in and of itself sufficiently clear to rebut the presumption. We have no quarrel with this conclusion. Proof of an agreement to employ someone permanently or "for life" is not clear evidence. However, when viewed in the context of the surrounding circumstances, such expressions may rise to the requisite level of clarity.

In *Lucacher v. Kerson*, 158 Pa.Super. 437, 45 A.2d 245 (1946), this court recognized that very same principle. The court held that a contract for permanent employment is indefinite but the surrounding circumstances may demonstrate that it was intended to be for life. If so, it is enforceable. Additional consideration is one of the factors to consider when determining this intent. However, the court specifically noted that it is not the only factor of importance. The court stated that the absence or presence of additional consideration must be contemplated as well as "the other circumstances surrounding the making of the contract...." *Id.*, 158 Pa.Superior Ct. at 443, 45 A.2d at 248.

This same principle was recognized in the recent case of *Murphy v. Publicker Industries, Inc.*, 357 Pa.Super. 409, 516 A.2d 47 (1986). A panel of this court, per Judge Beck, held that lifetime employment contracts are enforceable. The court ruled that something more than the mere agreement itself is necessary to rebut the at-will presumption in such a case. The court stated that "one exception" to the rule is when additional consideration is exchanged. 357 Pa.Superior Ct. at 418, 516 A.2d at 52. But, the court also held "that an employee can establish rights beyond at-will employment by means other than the additional considera-

tion rule." *Id.*, 357 Pa.Superior Ct. at 419, 516 A.2d at 52. Judge Beck stated that courts must focus on the circumstances surrounding the agreement and attempt to glean the parties' intent from those circumstances.

We agree with Judge Beck's careful reasoning. The at-will presumption may only be rebutted by clear evidence that the parties contracted for a definite period. *See Maloney*, 385 Pa. at 229, 122 A.2d at 696. A contract for lifetime employment is a heavy burden to place upon an employer's shoulders. Because it constitutes such a tremendous obligation, courts must require evidence beyond mere proof of the parties' agreement. A promise of permanent or lifetime employment may be nothing more than a casual aside. Or, it may be purely aspirational. The employer may be expressing his hope that a valued employee will stay with him forever. However, he may not have intended to create a binding agreement. These dangers are sufficiently real that courts must look to the circumstances surrounding the parties' agreement. Only when those circumstances demonstrate the parties' intent by clear evidence should a court enforce a lifetime employment contract. The presence of additional consideration is only a single factor, albeit an important one, which a court must consider to ascertain that intent. When the court is certain of the parties' intent, it must enforce that intent, irrespective of whether additional consideration is present. If a court fails to effectuate the parties' intent, it violates the canons of contract law as well as the very policies upon which the doctrine of at-will employment is based.

In the instant case, Oliver Realty impliedly adopted Grant Building's promise to Greene of lifetime employment. In exchange for that promise, Greene alleges that he worked for twenty-four years at a pay rate below union scale. A trial court must allow an issue to go to the jury unless it is so clear that reasonable minds could not possibly differ over its resolution. *Correll v. Werner*, 293 Pa.Super. 88, 90, 437 A.2d 1004, 1005 (1981). The court concluded that Greene worked at sub-union rates in ex-

change for a promise that he would not be laid off and not in exchange for a lifetime contract. This is an inappropriate conclusion. This is a factual issue which must be submitted to a jury. Greene's belief that he had been promised lifetime employment was sufficiently strong that he explained his position to a supervisor after Oliver took over Grant Building. The court must allow the jury to consider Greene's alleged "additional consideration" as well as all the circumstances surrounding the agreement. A jury might reasonably interpret the above cited facts so as to conclude that Greene has clearly rebutted the at-will presumption.

 The trial court also ruled that even if Greene successfully rebutted the presumption, he was only entitled to employment for a "reasonable" time which he had already received. This conclusion is incorrect. If the jury finds that Greene and Oliver Realty contracted for lifetime employment, such an agreement is enforceable. *Darlington* suggests that the presumption may be rebutted by evidence that the parties did not intend their relationship to be at-will. However, the court may be unable to determine the exact period for which the parties did intend to contract. In such a situation, the court may infer that the agreement is for a "reasonable" time. However, this principle is only applicable to the case before us if the jury finds that Greene's employment relation with Oliver was not at-will but was also not "for life." Under the authority of *Darlington,* the trial court may then interpret the agreement as being for a "reasonable time." We refuse to make an inflexible rule that all enforceable promises of lifetime employment constitute contracts which are to last for a "reasonable period." As we have repeatedly stressed, the paramount goal of contractual interpretation is to effectuate the parties' intent. Piling presumption upon presumption results in that intent being obscured by a procedural morass. That is not the way for courts to achieve justice.

We do not view our decision today as a change in the law of Pennsylvania. Rather, we have attempted to summarize

and synthesize some of the law applicable to employment contracts. We believe that Pennsylvania caselaw on this subject may be superficially confusing, however, upon careful analysis it is apparent that the principles underlying the cases are consistent.

Based on the above analysis, we reverse and remand for further proceedings consistent with this opinion.

POPOVICH, J., concurs in result.