J-A15039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GALERMAN & TABAKIN, LLP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT BOND, ESQUIRE,<br>ROBERT BOND, ESQ., LLC AND<br>LAW OFFICES OF ROBERT BOND,<br>ATTORNEY AT LAW | |
| | No. 2716 EDA 2015 |

Appeal from the Judgment Entered September 15, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): November Term, 2013 , No. 00462

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED AUGUST 24, 2016**

Appellant Robert Bond, Esquire,[1] appeals from the judgment entered following a bench trial in this breach of an employment contract action.  The judgment required Bond to pay fees to Appellee Galerman and Tabakin, LLP (G&T).  We vacate the judgment and remand for further proceedings consistent with this memorandum.

---

[1]  Galerman and Tabakin, LLP also named Robert Bond, Esq., LLC and Law Offices of Robert Bond, Attorney at Law as defendants.  The trial court entered judgment against Galerman and Tabakin, LLP, and in favor of Defendants on the unjust enrichment and conversion claims asserted against Bond, Robert Bond, Esq., LLC, and Law Offices of Robert Bond, Attorney at Law.  Bond appeals the judgment entered for the breach of contract count, and only Bond was named as a defendant for the breach of contract count.

On May 13, 2011, Bond and G&T executed an employment contract with an effective date of June 1, 2011.[2]

The employment contract provided that Bond would receive a base salary of $65,000.00 and would receive 30% of "any/all matters originated by Robert Bond, Esquire." Complaint, at Exh. A ("Employment Contract").

The contract also provided for "attorney obligations to firm upon voluntary or involuntary withdrawal/termination," which included the following fee payment provisions:

> Payment of fees to [G&T] earned on matters originated or otherwise brought to [G&T] by Robert Bond, Esquire during the period of employment as follows:
>
> A. [A]ny matter originated or generated within two months of withdrawal/termination – twenty percent of gross attorney fee (20%)[;]
>
> B. [A]ny matter originated or generated beyond 6 months but within one year of withdrawal/termination – thirty three and one-third (33 1/3%) percent of gross attorney fee;
>
> C. [A]ny matter originated or generated beyond one year of withdrawal/termination – fifty percent (50%) of gross attorney fee.

Employment Contract.

_____

[2] The parties dispute when Bond's employment began. Bond testified that his employment began on June 11, 2011. N.T., 1/28/2015, at 67. Bond's paystubs indicate that his employment began on June 9, 2011. Motion for Reconsideration, filed Mar. 16, 2015, at Exh. E. G&T maintains Bond's employment began on June 1, 2011, as stated in the contract.

On December 5, 2011, Bond's employment ended. The parties dispute the fees owed by Bond following his termination.

G&T initiated this breach of the employment contract action, claiming Bond owed G&T fees collected following his termination for matters originated prior to his termination. Following a bench trial in which Alan Galerman and Bond testified concerning the interpretation of the post-termination fee provision, the trial court found:

> Based on that meeting of the minds and the testimony presented[,] the court makes the following findings of fact[,] inter alia, and enters this order.
>
> 1. []Bond started his employment with [G&T] on 6/1/11 and ended the employment on 12/5/11.
>
> 2. The parties agreed to a fee splitting agreement on certain cases originated, i.e.[,] signed up, by [] Bond.
>
> 3. Section 2a of the Contract indicated that upon the completion of the case, [Bond] shall pay, and [G&T] shall receive[,] 20% of the fee for all matters originated by [] Bond for the period from 10/5/11 until 12/5/11.
>
> 4. Section 2b of the contract indicates that upon completion of the case, [Bond] shall pay[ a]nd [G&T] shall receive 33 and 1/3% of the fee for all matters originated by [] Bond for the period from 6/5/11 until 10/5/11.
>
> 5. Section 2c of the contract indicates that upon completion of the case, [Bond] shall pay and [G&T] shall receive 50% of the fee for all matters originated by [] Bond for the period from 12/5/10 until 6/5/11.
>
> The above findings do not affect any other matters which may still be outstanding and undecided in the complaint filed in the above action.

Findings of Fact and Order, filed 2/18/2015.

Bond filed a motion for reconsideration, which the trial court denied on March 19, 2015. On April 7, 2015, the trial court held an assessment of damages hearing. On June 12, 2015, the trial court entered its findings and verdict, which stated:

> [G&T] has presented credible evidence that [Bond] has failed to transmit to [G&T] fees owed to [G&T] as agreed in the fee sharing agreement *supra*[.] The amounts owed to [G&T] by [Bond] are as follows[:]
>
> 1. Section 2c 12/5/10 through 6/5/11  $61,288.30[.]
>
> 2. Section 2b 6/5/11 through 10/5/11  $10,734.90[.]
>
> 3. Section 2a 10/5/11 through 12/5/11 $ 7,183.80[.]
>
>     For a total                             $79,207.00[.]

Findings and Verdict Docketed 6/12/15.

On June 22, 2015, Bond filed a motion for post-trial relief. On August 6, 2015, the trial court denied the motion. On August 18, 2015, Bond filed a notice of appeal. Judgment was entered on September 22, 2015.[3]

The trial court did not order Bond to file a concise statement of errors complained of on appeal, and he did not file a statement. The docket indicates that on August 24, 2015, the trial court issued a statement adopting its findings of fact and order of February 18, 2015 and its verdict docketed June 12, 2015 in lieu of filing a formal 1925(a) opinion.

_____

[3] Upon review of the appeal, this Court noted there was no judgment entered on the docket and directed Appellant to file a praecipe to enter judgment with the trial court prothonotary, which he did.

Bond raises the following claims on appeal:

1. Whether the [t]rial [c]ourt abused its discretion or committed an error of law in construing Bond's fee-sharing obligations under an employment contract.

2. Whether the [t]rial [c]ourt abused its discretion or committed an error of law by re-writing the unambiguous terms of an employment contract based on extrinsic evidence.

3. Whether the [t]rial [c]ourt abused its discretion or committed an error of law in enforcing an employment contract's post-employment provision where the [t]rial [c]ourt found that there was no meeting of the minds as to that provision.

4. Whether the [t]rial [c]ourt abused its discretion or committed an error of law in finding that Bond's employment with G&T began on June 1, 2011 where the undisputed evidence established that it did not start until over a week later.

Appellants' Brief at 3.

This Court applies the following standard of review to verdicts following a bench trial:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court

- 5 -

because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Stephan v. Waldron Elec. Heating and Cooling LLC***, 100 A.3d 660, 664-65 (Pa.Super.2014) (quoting ***Wyatt, Inc. v. Citizens Bank of Pennsylvania***, 976 A.2d 557, 564 (Pa.Super.2009)).

Further, this Court applies the following when interpreting a contract:

> The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

***Stephan***, 100 A.3d at 665 (quoting ***Humberston v. Chevron U.S.A.***, Inc., 75 A.3d 504, 509–10 (Pa.Super.2013)).

Moreover:

> Contracts are enforceable when the parties reach a mutual agreement, exchange consideration, and have set forth the terms of their bargain with sufficient clarity. ***Greene v. Oliver Realty, Inc.***, []526 A.2d 1192 ([Pa.Super.]1987). An agreement is sufficiently definite if it indicates that the parties intended to make a contract and if there is an appropriate basis upon which a court can fashion a remedy. ***Id.*** Moreover, when the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document. ***Id.*** (citing ***Mears, Inc. v. National Basic Sensors***, [] 486 A.2d 1335, 1338 ([Pa.Super.]1984)).

***Stephan***, 100 A.3d at 665.

- 6 -

Appellant's first three issues challenge the trial court's interpretation of section 2 of the employment contract, and we will address the issues together. Section 2 addressed the fees owed to G&T after Bond's departure from the firm and stated:

> Payment of fees to [G&T] earned on matters originated or otherwise brought to [G&T] by Robert Bond, Esquire during the period of employment as follows:
>
> A. [A]ny matter originated or generated within two months of withdrawal/termination – twenty percent of gross attorney fee (20%)[;]
>
> B. [A]ny matter originated or generated beyond 6 months but within one year of withdrawal/termination – thirty three and one-third (33 1/3%) percent of gross attorney fee;
>
> C. [A]ny matter originated or generated beyond one year of withdrawal/termination – fifty percent (50%) of gross attorney fee.

Employment Contract, Section 2.

The parties do not dispute that section 2A requires Bond to pay 20% of fees on all matters originated in the last two months of his employment, i.e., from October 5, 2011 to December 5, 2011. *See* Appellant Brief at 10-11; Findings of Fact and Order, filed 2/18/2015.

The parties disagree about the interpretation of sections 2B and 2C. Section 2B requires payment of 33 1/3 % of the fees for "any matter originated or generated beyond 6 months but within one year of withdrawal/termination." Employment Contract, Section 2B. Bond

maintains that this section applies to the time period between December 5, 2010 and June 5, 2011. Appellant's Brief at 15.[4]

At the trial, Galerman testified that section 2B applied to matters originated between December 5, 2010 and June 5, 2011, i.e., matters originated more than 6 months, but less than 1 year, from termination.[5] N.T., 1/28/2015, at 21-22, 42-43. Galerman testified that "beyond" meant "prior to." *Id.* at 23, 46.

Bond testified that section 2B meant:

> [BOND]: 2B means to me that if I stayed over six months, than I would owe them 30 – or 33 percent of the cases that I signed within six month of my termination meaning, you know, it would have been from January 1st of my employment if I would have worked from January 1st to June 1st. If I stayed over six months, I would owe them from January 1st, hypothetically speaking, 30 percent, 33 percent of all the cases after I left that I signed during my employment. But we had an understanding that my employment from which they paid me was less than six months.

---

[4] Bond further argues that section 2 requires the payment of fees only for cases that originated during the period of employment and excludes cases originated before his employment. Appellant's Brief at 14. We will address this argument *infra*.

[5] Galerman claimed that for any matters originated between June 5, 2011 and October 5, 2011, Bond would owe the firm 70% of the fees, which is the amount he would have owed the firm for fees received while he remained employed at G&T. N.T., 1/28/2015, at 50-54. The contract language does not support this interpretation.

> THE COURT: All right. Am I correct in saying that you would have sent one-third of fees for any cases you signed up during the last six months of your employment?
>
> [BOND]: Yes, yes, sir.

N.T., 1/28/2015, at 74-75.

The trial court found there was a meeting of the minds as to section 2B and interpreted this provision to require payment of fees from June 5, 2011 through October 5, 2011. This was error. The language of section 2B is unambiguous. The section requires payment of 33 1/3 percent of gross attorney fees for all matters generated more than 6 months but less than 12 months from termination, i.e., all matters generated between December 5, 2010 and June 5, 2011.

Further, even if we found that the language was ambiguous and, therefore, considered extrinsic evidence to determine the time frame of section 2B, we would find the trial court erred in finding there was a meeting of the minds as to provision 2B. Neither the contract language nor Galerman's testimony at trial supports the trial court's interpretation. Rather, the contract language and Galerman's testimony support an interpretation that Bond would owe fees for all cases originated more than 6 months but less than a year from his termination, i.e., from December 5, 2010 through June 5, 2011. Employment Contract, Section 2; N.T., 1/28/2015, at 22 ("I'm saying his termination date was December of [20]11. Anything that was signed up between six months before that and a year before that, we would get a third."). Bond testified that he agreed with the

court that he would have owed 33 1/3% of fees in all cases originated within 6 months, but clarified that he would owe fees only if he had worked at G&T for more than 6 months. *See* N.T., 1/28/2015, at 74-75. Further, at the hearing on the post-trial motions, and in his appellate brief, Bond argued the section applied to matters originated between December 5, 2010 and June 5, 2011. N.T., 8/5/2015, at 6-7. The trial court, therefore, erred in finding there was a meeting of the minds to find that section 2B required payment for matters originated June 5, 2011 through October 5, 2011.

Section 2C states:

> [A]ny matter originated or generated beyond one year of withdrawal/termination – fifty percent (50%) of gross attorney fee.

Employment Contract, Section 2C. The trial court found that this provision meant fifty percent of gross fees on cases originated between December 5, 2010 and June 5, 2011. Findings of Fact and Order. Galerman testified that this provision meant Bond owed fees for any matter originated more than 1 year prior to termination of Bond's employment. N.T., 1/28/2015, at 30-31. He further stated that "beyond" means "prior," and therefore the fees owed under section 2C applied to matters originated prior to December 5, 2010. N.T., 1/28/2015, at 46. Bond testified that section 2C meant cases originated within one year of termination, but only those cases generated while he was employed. N.T., 1/28/2015, at 75 ("2C means that if my employment lasted for over a year, then I would owe them, I believe, 50%

of all the cases that I signed up from the Day 1 of my employment until Day 360.")

The trial court erred when it found that this provision meant any fees on cases originated between December 5, 2010 and June 5, 2011. Findings of Fact and Order. Similar to Section 2B, this section contained unambiguous language. It required payment to G&T for matters generated more than one year prior to Bond's departure, i.e., prior to December 5, 2010.[6]

Bond's last issue maintains the trial court erred in finding his employment commenced on June 1, 2011. Appellant's Brief at 24. He maintains, although the contract states the commencement date was June 1, 2011, he did not begin working until June 9, 2011. *Id.* Therefore, because he worked at G&T for less than six months, he maintains that only section 2A applied. *Id.* Bond argues that sections 2A, 2B, and 2C only refer to cases that were originated or generated during his period of employment. *Id.* at 24, 14.

We disagree with Bond's conclusion that sections 2B and 2C did not apply. The introduction to section 2 states:

---

[6] Because we determine that section 2C was unambiguous, we need not address whether the trial court abused its discretion in enforcing section 2C even though it found there was no meeting of the minds as to the provision.

> Payment of fees to [G&T] earned on matters originated or otherwise brought to [G&T] by Robert Bond Esquire during the period of employment as follows . . .

Employment Contract, Section 2. The phrase "or otherwise brought to" would include cases transferred to G&T following Bond's employment but originated prior thereto. The trial court also interpreted the contract to include cases originated before his employment commencement date. **See** Order and Findings of Fact. Galerman's testimony supports this finding. N.T., 1/28/2015, at 45 ("Q: And your interpretation of the contract is that Paragraphs A, B and C apply to all cases that Mr. Bond brought with him and all cases that he originated while he was at the firm, correct? A: That's correct."). Because we find Bond owes G&T for cases originated prior to his employment, regardless of his length of employment, we need not determine whether Bond's employment began on June 1, 2011 or June 9, 2011.

We reverse and remand to the trial court for further proceedings consistent with this opinion.

Judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/2016

- 12 -