**REGSCAN, INC., Appellant,**

v.

**CON–WAY TRANSPORTATION SERVICES, INC., Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 16, 2005.

Filed May 16, 2005.

Daniel F. Schranghamer, Williamsport, for appellant.

J. David Smith, Williamsport, for appellee.

Before: HUDOCK, BENDER and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 RegScan, Inc., (RegScan) appeals the entry of summary judgment in favor of Con–Way Transportation Services, Inc., (Con–Way) on August 6, 2004, in the Court of Common Pleas of Lycoming County. On review, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows: On May 3, 2000, RegScan, an information systems business and software developer based in Williamsport, Pennsylvania, entered into a licensing agreement with Con–Way, a Michigan-based trucking firm, to develop Con–Way's in-house "Haz–Calc" software system design into a commercial program to be used by the trucking industry to assist in the transportation of hazardous materials. Con–Way chose RegScan because of RegScan's expertise in developing software and products for private businesses to facilitate their compliance with government regulatory schemes.

¶ 3 The licensing agreement provided that RegScan would pay to Con–Way 32% of the gross revenue received by RegScan from the sale, use, or license of the modified program. The licensing agreement required the parties to determine, through mutual agreement, a per-unit commercial sale price for the program within 15 days after the program was completed and would be ready for sale to the general public. An agreement on the per-unit sale price was not reached by the parties, but, beginning in the spring of 2001, RegScan sold the program, entitled "Hazmat Loader," for a sale price of $600.00 per unit, without objection from Con–Way. "Hazmat Loader" continued to be sold to various trucking companies and law enforcement agencies throughout 2001 and 2002. The licensing agreement also provided that Con–Way would provide RegScan with endorsements for "Hazmat Loader" and other RegScan products, as agreed to by the parties.

¶ 4 RegScan made two royalty payments to Con–Way that consisted of 32% of the gross revenue received by RegScan for the sale of "Hazmat Loader." Thereafter, RegScan discontinued making royalty payments to Con–Way based on its conclusion that Con–Way's "HazCalc" system design did not have the ability to generate data with regard to placarding, labeling, and load segregation for the shipment of hazardous materials, and, therefore, RegScan contended that it was forced to create, develop, market, and sell "Hazmat Loader" through its own efforts, without the use of Con–Way's "HazCalc" program.[1]

---

1. Although Con–Way provided RegScan with the promised endorsements of "Hazmat Loader," RegScan did not request Con–Way to endorse other RegScan products.

¶ 5 The parties' relationship deteriorated, and, on February 20, 2002, RegScan filed a complaint for declaratory judgment seeking to invalidate the May 3, 2000 licensing agreement and declare that RegScan's program was not subject to the licensing agreement due to the fact that "Hazmat Loader" was created without RegScan's use of the "HazCalc" system design. RegScan also alleged a claim of misrepresentation and damages against Con–Way, which asserted that Con–Way misrepresented its "HazCalc" system design. Con–Way's answer denied RegScan's allegations, and it contended, *inter alia*, that the licensing agreement between the parties was a valid and enforceable contract pursuant to Pennsylvania's Commercial Code, 13 Pa.C.S.A. § 1101, *et seq.*

¶ 6 The case proceeded through pre-trial pleadings, and on December 12, 2003, RegScan filed a statement of uncontested facts and motion for summary judgment. On that same day, Con–Way filed a motion for summary judgment. The trial court conducted argument on the summary judgment motions, and, on August 4, 2004, the trial court entered summary judgment in favor of Con–Way on all counts of RegScan's complaint. The trial court authored an opinion in support of its judgment. Thereafter, RegScan filed a notice of appeal to this Court.

¶ 7 The trial court ordered RegScan to file a concise statement of matters complained of on appeal within 14 days pursuant to Pa.R.A.P.1925(b). RegScan failed to file the Pa.R.A.P.1925(b) statement with the trial court within 14 days, and the trial court issued a Pa.R.A.P.1925(a) opinion that did not explicitly find RegScan's issues waived but, instead, stated that it would "rely on [its previous opinion] and address nothing further." *See* Trial court opinion, 9/22/2004, at 1 (unnumbered). Thereafter, RegScan filed a Pa.R.A.P.

1925(b) statement and accompanying affidavit from counsel indicating that counsel did not receive the trial court's Pa.R.A.P. 1925(b) order. The trial court, in response, authored a supplemental Pa.R.A.P. 1925(a) opinion that indicated that it would adopt its previous opinion of August 6, 2004, in response to the matters raised by RegScan's concise statement.

¶ 8 RegScan presents the following issues for our review:

1. Did the [trial court] err, as a matter of law, in determining that the May 3, 2000 [l]icensing [a]greement [ . . . ] between [RegScan and Con–Way] was a valid and binding agreement?

2. Did the [trial court] err, as a matter of law, in determining that the [a]greement was not null and void on the basis of the [p]arties' mutual mistake about the subject matter of the [a]greement?

3. Did the [trial court] err, as a matter of law, in determining that the [a]greement was not voidable on the basis of RegScan's unilateral mistake about the subject matter of the [a]greement?

4. Did the [trial court] err in making findings of fact that were not supported by the evidentiary record before the [trial court]?

RegScan's brief, at 4.

¶ 9 Preliminarily, we must consider whether RegScan's issues are waived due to its failure to comply with Pa.R.A.P. 1925(b). We conclude that they are not waived. After the trial court received RegScan's belatedly-filed Pa.R.A.P.1925(b) concise statement, the trial court issued an opinion that adopted its previous August 6, 2004 opinion as a response to the matters presented in the concise statement. Therefore, it is clear that the trial court reviewed the issues presented in the belatedly-filed concise statement and addressed

them. Consequently, RegScan's issues are not waived, and we may review them. *See Commonwealth v. Alsop*, 799 A.2d 129, 134 (Pa.Super.2002) (Superior Court will not find waiver where trial court addresses issue in late-filed concise statement). Accordingly, we turn to an analysis of the merits of RegScan's issues.

■ ¶ 10 RegScan's issues challenge the trial court's entry of summary judgment, and, therefore, our standard of review is as follows:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

> As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Gutteridge v. A.P. Green Servs.*, 804 A.2d 643, 651 (Pa.Super.2002) (citations omitted), *appeal denied*, 574 Pa. 748, 829 A.2d 1158 (2003).[2]

■ ¶ 11 We begin with the observation that contemporary contract law provides generally that a contract is enforceable when the parties reach mutual agreement, exchange consideration and have outlined the terms of their bargain with sufficient clarity. *See Greene v. Oliver Realty Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, 1194 (1987) (citation omitted). An agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appro-

---

2. It is noteworthy that the license agreement in question contains a choice-of-law clause, which states, "[i]t is agreed that this Agreement *may be interpreted* according to the laws of the State of Michigan without regard to the conflict of laws principles of such state." *See* Licensing agreement, 5/3/2000, at 6 (unnumbered) (emphasis added). Nevertheless, the choice-of-law issue was not presented by either party to the trial court, and neither party has cited to Michigan law in their arguments to the trial court or this Court. Therefore, we decline to reach this issue because it is not before us. *See Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 759 A.2d 926, 930 n. 2 (Pa.Super.2000) (Superior Court would not interpret apparently valid choice-of-law clause in contract because issue was not raised before Superior Court). Accordingly, we will apply Pennsylvania law in our analysis of this case. *Cf. Hydraroll*, 759 A.2d at 930 n. 2.

priate remedy. *See Linnet v. Hitchcock,* 471 A.2d 537, 540 (Pa.Super.1984).[3]

 ¶ 12 As we explained in *Greene v. Oliver Realty, Inc.,* 526 A.2d at 1194:

> If an essential term is left out of the agreement, the law will not invalidate the contract but will include a reasonable term. For instance, if the parties do not specify price, a court will impose a reasonable price which will usually be the item's market value. However, if the parties include the term but have expressed their intention ambiguously, the court will not impose a reasonable term and the contract may fail for indefiniteness. A court will not attempt to fix contractual terms which are inconsistent with the intent of the parties. That is because the paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. When the language of a written contract is clear and unequivocal, its meaning must be determined by its contents alone. Only if the words used are ambiguous may a court examine the surrounding circumstances to ascertain the intent of the parties. [ . . . ]. Because courts wish to effectuate the parties' intentions, they may enforce an indefinite contract if its terms have become definite as the result of partial performance. One or both parties may perform in such a way as to make definite that which was previously unclear.

*Greene,* 526 A.2d at 1194 (citations omitted).

¶ 13 Reference to the licensing agreement indicates that the consideration of-fered to Con–Way by RegScan was a royalty scheme to be paid by RegScan to Con–Way on a monthly basis. The licensing agreement states the following:

> 7. Licensing Fees. In consideration of the License herein granted to RegScan by Con–Way, RegScan shall pay Con–Way licensing fees as follows:
>
> a. An amount equal to 32% of the gross revenue received by RegScan from the sale, use or license of ["Hazmat Loader"] from any source including, without limitation, subscription fees for web-site access, per use fees, maintenance, and licensing fees.
>
> b. Licensing fees due Con–Way shall be considered earned in the month RegScan receives revenue and shall be due and paid to Con–Way without offset within thirty (30) days after the last day of each month.
>
> c. With each payment to Con–Way, RegScan shall submit to Con–Way a copy of RegScan's records of sales payments received during the previous month. RegScan agrees that a representative of Con–Way may audit the records of RegScan once each year, upon reasonable notice to RegScan, at RegScan's principal office during regular business hours, to confirm the accuracy of the revenue received by RegScan from sale of ["Hazmat Loader."] Con–Way's representative shall not be entitled to examine the other business

---

**3.** There is some question among both federal and state jurisdictions whether the Uniform Commercial Code's provisions with regard to the sale of goods apply to software licensing agreements, such as the agreement presently before this Court. As there is no consensus among these jurisdictions, we will analyze the agreement under normal principles of Pennsylvania contract law. In substance, there is little difference between these traditional principles and those codified under Pennsylvania's version of the Uniform Commercial Code. We will discuss their similarities *infra.*

records of RegScan except as may be required to determine said sales revenue.

d. Within 15 days of the completion of the development of ["Hazmat Loader,"] unless otherwise established in the Scope of Work, the parties together shall determine the pricing for which ["Hazmat Loader"] shall be made available to any and all customers. Except as otherwise provided in this Agreement, the pricing schedules shall remain in effect until modified by the written agreement of the parties.

*See* Licensing agreement, 5/3/2000, at 3 (unnumbered).

¶ 14 The above cited language indicates, therefore, that the "price" of the licensing agreement, *i.e.,* the royalty fees, was indefinite only to the extent that the price of the end product, upon which the royalties were to be based, was not agreed to by the parties when the licensing agreement was signed. However, RegScan established a price for "Hazmat Loader," sold it to customers, and paid two royalty payments to Con–Way based on that price. Con–Way, although uncomfortable with what it considered to be too high of a price for "Hazmat Loader," did not formally object to RegScan's pricing scheme and accepted the royalty payments. When these facts are viewed objectively, it becomes clear that the parties' performance of the contract with the pricing scheme established by RegScan made definite the undecided pricing clause of the contract. *See Greene,* 526 A.2d at 1194.

¶ 15 RegScan's argument relies heavily on the fact that Con–Way, through its principals, conveyed its discomfort with the price of "Hazmat Loader" to its end users and objected to RegScan's free provision of the product to state agencies charged with the cleanup of hazardous materials. Neither of these facts affected the performance of the contract by either party. As indicated above, Con–Way never formally objected to RegScan's pricing scheme. Therefore, its reservations could not be said to have interfered with the contract as written or modified by the performance of the parties. Moreover, Con–Way's objection to RegScan's free provision of the software to state agencies was not an objection to the contract itself, but, rather, an objection to what Con–Way considered to be RegScan's failure to perform the contract as agreed to by the parties. Therefore, we are satisfied that the licensing agreement was not invalid due to the lack of a definite pricing provision at the time of the execution of the licensing agreement. *Greene,* 526 A.2d at 1194. Accordingly, RegScan's argument fails.

¶ 16 Moreover, if we were to follow the lead of several other jurisdictions and apply the sales provisions of Pennsylvania's Commercial Code to the present case, we would be left with an identical result. Title 13 Pa.C.S.A. § 2305 of the Pennsylvania Commercial Code provides the following:

(a) GENERAL RULE.—The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if:

(1) nothing is said as to price;

(2) the price is left to be agreed by the parties and they fail to agree; or

(3) the price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.

(b) PRICE TO BE FIXED BY PARTY.—A price to be fixed by the seller or by the buyer means a price for him to fix in good faith.

(c) PRICE NOT FIXED THROUGH FAULT OF PARTY.—When a price left to be fixed otherwise than by agreement of the parties fails to be fixed through fault of one party the other may at his option treat the contract as cancelled or himself fix a reasonable price.

(d) INTENT NOT TO BE BOUND WITHOUT ESTABLISHED PRICE.—Where, however, the parties intend not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract. In such a case the buyer must return any goods already received or if unable so to do must pay their reasonable value at the time of delivery and the seller must return any portion of the price paid on account.

¶ 17 Therefore, as is the case under traditional Pennsylvania contract law principles, sales contracts construed according to Pennsylvania's Commercial Code do not necessarily fail due to the absence of a price within the sales contract. *See, e.g, Greene,* 526 A.2d at 1194; *see also* 13 Pa.C.S.A. § 2305. In the present case, the pricing scheme was to be agreed upon by the parties within 15 days of the execution of the contract. Pursuant to 13 Pa. C.S.A. § 2305(a)(2), the contract was concluded properly. Although a price was not fixed by the parties per the terms of the licensing agreement, RegScan's provision of a price and Con–Way's acceptance of this price structure rendered the licensing agreement definite as to that point. *See* 13 Pa.C.S.A. § 2208 (any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement). Accordingly, RegScan's argument fails pursuant to Pennsylvania's Commercial Code.

¶ 18 Next, RegScan contends that the trial court erred in finding the contract valid because the parties did not reach an agreement as to endorsements for other programs produced by RegScan. This argument is without merit. The "marketing" clause of the licensing agreement states the following:

Marketing. RegScan shall market ["Hazmat Loader"] as an additional component of [its ongoing product line]. RegScan shall use its best efforts to market ["Hazmat Loader."] Con–Way and RegScan may feature ["Hazmat Loader"] on their respective web sites and marketing materials, as a product available for subscription through RegScan. Con–Way will provide RegScan with (a) endorsements of both ["Hazmat Loader"] and other RegScan Offerings as mutually agreed to by the Parties, (b) a list of transportation companies that are potential users of ["Hazmat Loader,"] and (c) any other marketing assistance reasonably requested by RegScan to market ["Hazmat Loader"] at no cost to Con–Way.

*See* Licensing agreement, 5/3/2000, at 3 (unnumbered).

¶ 19 Therefore, the licensing agreement contemplated that, in the future, the parties would agree mutually which RegScan products Con–Way would endorse in addition to "Hazmat Loader." There is no dispute that Con–Way provided to RegScan an endorsement of the "Hazmat Loader" program. The record indicates that RegScan did not approach Con–Way regarding any of its other products to reach an agreement upon which other RegScan products would receive Con–Way's endorsement. As such, endorse-

ments for other products offered by Reg-Scan were not at issue between the parties and could not have constituted an essential part of the licensing agreement as it existed between the parties at the time the parties concluded their business relationship. Accordingly, RegScan's argument fails.

¶ 20 RegScan contends next that the trial court erred by not finding that the licensing agreement was void on the basis of mutual or unilateral mistake. The law of this Commonwealth holds that when a party who is adversely affected by a mistake in a written contract seeks relief through the courts, the relief granted depends on the nature and effect of that mistake. *Lanci v. Metropolitan Ins. Co.*, 388 Pa.Super. 1, 564 A.2d 972, 974 (1989). The mistake must go to the basis of the bargain between the parties, must materially affect the parties' performance, and must not be one as to which the injured party bears the risk before the party will be entitled to relief. *Id.*, 564 A.2d at 974. Where the mistake is unilateral, if the nonmistaken party knows or has reason to know of the unilateral mistake, and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as a mutual mistake. *Id.*, 564 A.2d at 974. If a mistake is demonstrated, the contract may be reformed, or the injured party may avoid his or her contractual obligations. *See Loyal Christian Benefit Assoc. v. Bender*, 342 Pa.Super. 614, 493 A.2d 760, 762 (1985) (party injured by mistake may acquire reformation of the contract or avoid contractual obligations).

¶ 21 Reference to RegScan's complaint indicates that this issue was not presented in RegScan's complaint, and the *complaint is devoid of facts that would permit RegScan to obtain relief on a theory of mutual or unilateral mistake.* With regard to the invalidity of the licensing agreement, the complaint alleges the following:

11. The alleged contract is invalid because it is an agreement to agree in the future in that:

a. [The] price was never agreed upon by the parties which was required in the contract.

b. The percentage owed Con–Way is subject to the agreement in pricing which was left open in said contract.

c. The endorsements to be provided by Con–Way required an agreement in the future, which was not completely done.

12. The alleged licensing agreement never had a meeting of the minds, and therefore is not a binding contract.

RegScan's complaint, 2/20/2002, at 3.

¶ 22 Therefore, the sole averment presented by RegScan in its amended complaint that could be construed to allege mutual mistake of the parties or unilateral mistake is set forth in paragraph 12. *See, e.g., Warren v. Greenfield*, 407 Pa.Super. 600, 595 A.2d 1308, 1313 (1991) (contract containing mistake going to basis of bargain invalid due to no "meeting of minds."). This statement is merely a conclusion of law, for which no response by Con–Way was required. *See Walnut–Juniper Co. v. McKee, Berger & Mansueto, Inc.*, 236 Pa.Super. 1, 344 A.2d 549, 552 (1975) (no response required for conclusion of law). Moreover, the phrase "no meeting of the minds" does not automatically connote mutual or unilateral mistake, especially where the complaint lacks facts that indicate the nature of the mistake. Further, RegScan failed to specify in the complaint whether it was proceeding on a mutual mistake theory or a unilateral mistake

theory. Rule 1019(b) of the Pennsylvania Rules of Civil Procedure requires that averments of mistake must be pleaded with particularity. RegScan's conclusory statement fails to assert with any degree of particularity a claim of mutual or unilateral mistake.

¶ 23 Indeed, it appears this issue was first presented to the trial court in Reg-Scan's memorandum in support of its motion for summary judgment, where it appeared as part of its argument in support of its misrepresentation claims (Counts II and III of the complaint). The elements of a cause of action for intentional misrepresentation or fraud are entirely distinct from a theory of relief based on mistake. *See Presbyterian Med. Ctr. v. Budd,* 832 A.2d 1066, 1072 (Pa.Super.2003) (elements of cause of action of intentional misrepresentation are (1) representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance).

¶ 24 Accordingly, factual averments pertaining to a cause of action for Intentional misrepresentation would bear little resemblance to a theory of relief based on mutual or unilateral mistake. Therefore, as RegScan's complaint is devoid of facts sufficient to prevail on theory of mutual or unilateral mistake, we find this claim waived. *See Estate of Swift by Swift v. Northeastern Hosp.,* 456 Pa.Super. 330, 690 A.2d 719, 723 (1997) (not necessary that complaint identify the specific legal theory of underlying claim; however, complaint must apprise defendant of claim being asserted and summarize essential facts to support claim, and if plaintiff fails to

plead separate cause of action properly, the cause he did not plead is waived).

¶ 25 Lastly, RegScan complains that the trial court erred by making factual findings that were not supported by the record. However, each of the points of error RegScan presents in this argument attack factual findings that the trial court made to address RegScan's arguments with regard to its theory of mutual or unilateral mistake, which theory we have found waived. Accordingly, we dismiss RegScan's argument.

¶ 26 As RegScan's arguments fail or are waived, we affirm the judgment of the trial court.

¶ 27 Judgment affirmed.