J-A18003-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOANN MARKOVICH | | IN THE SUPERIOR COURT |
| | | OF PENNSYLVANIA |
| Appellant | | |
| | | |
| v. | | |
| | | |
| LARRY MARKOVICH | | |
| | | |
| Appellee | | No. 1219 WDA 2021 |

Appeal from the Order Entered September 23, 2021
In the Court of Common Pleas of Allegheny County
Family Court at No: FD20-009243-002

BEFORE: STABILE, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                    **FILED: JUNE 23, 2023**

Appellant, Joann Markovitch ("Wife"), appeals from an order denying her exceptions to a master's report and recommendation to dismiss her complaint against Appellee Larry Markovitch ("Husband") seeking enforcement of a post-nuptial agreement. The court agreed with the master that the contract was unenforceable because it failed to state how long it would remain in force. For the reasons given below, we conclude the court erred by failing to infer a reasonable time of completion for the contract. We vacate the order of dismissal and remand for further proceedings.

The parties married in 1968 and separated in 2013. Neither party has filed a divorce action. Prior to the parties' separation, they had financial difficulties that forced them to file bankruptcy and lose their marital residence. Thereafter, the parties rented a residence at 3210 Washington Pike in

Bridgeville, their final marital residence before their separation. Husband moved out of this residence, and Wife continues to live there.

On September 10, 2013, the parties signed a handwritten postnuptial agreement before a notary which stated in full:

> I agree to pay the rent at 3210 Washington Pike, Bridgeville, PA. in the sum of $750.00.
>
> It will be paid no later than the 1st of the month & deposited into the account of [Wife].

Husband testified that he entered this agreement to "help [Wife]." N.T., 3/21/22, at 22.

Husband made monthly payments to Wife of $750.00 in October, November and December 2013. Between January 2014 and November 2015, Husband made sporadic payments to Wife, including six payments of $750.00 and other smaller amounts. On July 22, 2014, Wife filed a complaint in magisterial district justice court alleging that Husband failed to pay rent of $150.00 in January 2014 and $500.00 in March 2014. On September 5, 2014, the magisterial district justice entered judgment against Husband in the amount of $650.00.[1] After November 2015, Husband stopped making payments altogether.

On December 7, 2020, Wife filed a complaint seeking enforcement of the postnuptial agreement in the Civil Division of the Court of Common Pleas

---

[1] It does not appear that Husband appealed this judgment.

of Allegheny County. The complaint alleged that following the September 2014 judgment in magisterial district justice court, Husband made a few sporadic payments but for the most part ignored his contractual duty to pay rent. The complaint further alleged that as of October 10, 2020, Husband owed Wife a total of $55,332.20.[2]

One week after filing her complaint, Wife moved to transfer her action from the Civil Division to the Family Court Division, and the court granted the motion. The Family Court judge assigned to the case appointed a master to hear the case, and the master, Jacqulyn Obara, Esquire, scheduled a hearing for March 22, 2021.

On March 22, 2021, Wife appeared for the hearing with her attorney, and Husband appeared *pro se* via telephone. Husband and Wife testified during the hearing, but neither testified as to how long they intended the postnuptial agreement to last. On April 16, 2021, the master filed a report and recommendation, finding that Wife was entitled to recover nothing from Husband. The master found the agreement too indefinite to enforce because "there was no language regarding the duration of the obligation to pay $750 per month for rent, and no clear evidence of the parties' intent as to duration."

---

[2] Wife claims in her brief that Husband did not answer the complaint and therefore is deemed to have admitted all averments in the complaint. The notice to defend attached to Wife's complaint, however, stated that Husband was not required to file a written response to the complaint.

Master's Report, 4/16/21, at 7. The master also found that Wife was not entitled to an award of attorney fees and expenses. On May 4, 2021, Wife filed timely exceptions to the master's report.[3] On September 23, 2021, the court denied Wife's exceptions and entered the master's report and recommendation as a final order. Wife timely appealed from this order, and both Wife and the court complied with Pa.R.A.P. 1925.

Wife raises two issues in this appeal, which we have re-ordered for the sake of convenience:

> 1. The rulings of both the master and the trial court in the conduct of this case were not supported by the law, and thus the result in this case amounted to a miscarriage of justice.
>
> 2. Wife's constitutional right to pursue her civil action against husband was impermissibly burdened by the civil procedural rules and the actions of judicial officers in her case, thus wife was deprived of a fair trial.

Wife's Brief at 11.

Wife contends that the trial court erred or abused its discretion in accepting the master's determination that Wife had no right of recovery against Husband. The master recommended against enforcement of the postnuptial agreement on the ground that it failed to specify how long Husband was required to make monthly payments to Wife. The law provides, however, that when a contract fails to include a date of completion, the court

---

[3] **See** Pa.R.Civ.P. 1920.55-2(b) (parties may file exceptions within twenty days after master's report and recommendations).

should infer a reasonable period of time for completion. Thus, the trial court erred by accepting the master's recommendation not to enforce the postnuptial agreement.

When interpreting a marital settlement agreement, "the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." **Chen v. Chen**, 840 A.2d 355, 360 (Pa. Super. 2003). On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion. **Tuthill v. Tuthill**, 763 A.2d 417, 419 (Pa. Super. 2000) (*en banc*). Furthermore,

> the report of the master is entitled to great consideration in that he has heard and seen the witnesses, and it should not be lightly disregarded. It is advisory only, however, and the reviewing court is not bound by it and it does not come to the court with any preponderate weight or authority which must be overcome. The reviewing court must consider the evidence, its weight and the credibility of the witnesses, *de novo*. The Master's report is not controlling, either on the lower court or on the appellate court.

**Rothrock v. Rothrock**, 765 A.2d 400, 404 (Pa. Super. 2000).

> Post-nuptial agreements such as the agreement herein
>
> are to be reviewed under the same principles as pre-nuptial [agreements] . . . Case law further demonstrates that a pre-nuptial agreement is a contract and, therefore, is to be evaluated under the same criteria as other contracts; absent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements.

**Lugg v. Lugg**, 64 A.3d 1109, 1112 (Pa. Super. 2013).

The goal of contractual interpretation is to ascertain the intent of parties at the time they entered the disputed agreement and to give effect to the

- 5 -

agreement's terms. *Greene v. Oliver Realty, Inc.,* 526 A.2d 1192, 1194 (Pa. Super. 1987). We will find the parties' agreement enforceable as a contract "when the parties to it [] reach a mutual understanding, [] exchange consideration, and [] delineate the terms of their bargain with sufficient clarity." *Weavertown Transport Leasing, Inc. v. Moran,* 834 A.2d 1169, 1172 (Pa. Super. 2003). The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. *Laudig v. Laudig*, 624 A.2d 651, 653 (Pa. Super. 1993) (construing postnuptial agreement). To construe the parties' intent, the court should examine the entire agreement and "may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently had in view and the nature of the subject matter of the agreement." *Id.*

*Greene* makes the critical point that courts treat ambiguous agreements differently than agreements that omit an essential term:

> If an essential term is left out of the agreement, the law will not invalidate the contract but will include a reasonable term. For instance, if the parties do not specify price, a court will impose a reasonable price which will usually be the item's market value. However, if the parties include the term but have expressed their intention ambiguously, the court will not impose a reasonable term and the contract may fail for indefiniteness.

*Id.*, 526 A.2d at 1194.

Thus, when an agreement fails to include an essential term such as the date for completion of an agreement, "the agreement is not vitiated; rather, an agreement for a reasonable time will be inferred." *Cashdollar v. Mercy*

*Hosp. of Pittsburgh*, 595 A.2d 70, 76 (Pa. Super. 1991) (internal quotation marks omitted); *see also Scullion v. EMECO Industries, Inc.*, 580 A.2d 1356, 1359 (Pa. Super. 1990) (citing *March v. Boyle*, 530 A.2d 491, 494 (Pa. Super. 1987)) ("when the exact period for which the parties intended to contract is unable to be determined, an agreement for a 'reasonable time' will be inferred"). Although we cannot locate any decisions applying the reasonable time precept to postnuptial agreements, we find it applicable under the principle that contract law applies to postnuptial agreements. *Lugg*, 64 A.3d at 1112.

To infer a reasonable time period, the court should apply the standards articulated in *Laudig* to ascertain the parties' intent. Specifically, the court should infer how long the parties intended the contract to last by examining the entire agreement, taking into account the surrounding circumstances, the situation of the parties when the contract was made, the objects they apparently had in view and the nature of the subject matter of the agreement. *Id.*, 624 A.2d at 653. In addition, the court can infer a reasonable time of completion by taking into account the performance of the parties after the agreement. This was precisely the point made by the decision cited in the master's report, *RegScan, Inc. v. Conway Transportation Services, Inc.*, 875 A.2d 332 (Pa. Super. 2005). *RegScan* instructs that

> [i]f an essential term is left out of the agreement, the law will not invalidate the contract but will include a reasonable term. For instance, if the parties do not specify price, a Court will impose a reasonable price which will usually be the item's market value.

However, if the parties include the term but have expressed their intention ambiguously, the court will not impose a reasonable term and the contract may fail for indefiniteness . . . Because courts wish to effectuate the parties' intentions, they may enforce an indefinite contract **if its terms have become definite as the result of partial performance. One or both parties may perform in such a way as to make definite that which was previously unclear**.

*Id.,* 875 A.2d at 336-37 (emphasis added). *Greene*, which we have cited above, makes the same point. *Id.*, 526 A.2d at 1194.

In this case, the postnuptial agreement between the parties provided that "I agree to pay rent at 3210 Washington Pike . . . in the amount of $750.00," and that rent "will be paid no later than the 1st of the month" and deposited into Wife's account. There is no dispute that Husband was the payor under this agreement. The agreement, however, failed to include an essential term—the date of completion of the agreement (*i.e.*, the number of months Husband was required to pay rent). Under the precedents discussed above, the master and the court should have inferred a reasonable date of completion. Instead, they determined that the agreement was too ambiguous to enforce. This was error.

The master concluded that the agreement was unenforceable because there was no language in the agreement concerning its duration and no other evidence relating to the parties' intent concerning its duration. The master wrote:

The plain reading of this language is that the agreement was to pay a total of $750 in rent to be deposited no later than the first of the month. While both parties signed the agreement, it can

reasonably be inferred that Husband was to pay this sum given that the money was to be deposited into Wife's account. However, there is no language indicating that the obligation is a per month commitment. More significantly, perhaps, there is no language indicating the duration of this obligation.

This plain reading compels a finding that the contract had been completed, as Husband paid $750 in October 2013. However, Wife alleges that the agreement meant that Husband has had an obligation to pay her rent each month for the past ninety-one (91) months. To determine the parties' intent, this Master looked at the parties' subsequent performance and considered the testimony offered. After signing the agreement, Husband sent monthly payments to Wife for three months (i.e.—October, November, and December 2013). **Thus, this Master finds that it was the intent of the parties that Husband would make monthly payments in the amount of $750 per month to Wife for her rent.**

With regard to duration, Husband's payments to Wife became sporadic beginning in January 2014 and ultimately stopped altogether in November 2015.[4] The evidence set forth at the hearing establishes that Husband paid a total of $6,300 from October 2013 through November 2015. It is significant to note that in the twenty-seven (27) months from the date the agreement was signed until Husband's last payment, Husband made six (6) payments of $750 and the remaining payments were made in varying increments. Husband's testimony was that he intended to "help her out," and his actions support this testimony.

Wife did not specifically testify regarding her intent as to duration of this agreement at the time it was signed. This Master finds it difficult to believe that Wife truly intended this agreement to extend to the present day given her lack of due diligence in pursuing the claim. To the extent Wife intimated this in her testimony, this Master finds it to lack credibility. Wife attempted to enforce the agreement in 2014 at the Magistrate, and,

_____

[4] The master also noted in the fact section of her report that Wife obtained an uncontested judgment of $650.00 against Husband in magisterial district justice court for missing payments in January 2014 and March 2014. Master's Report and Recommendation, 4/16/21, at 3. The master credited Husband's testimony, however, that he did not receive notice of the action before the magisterial district justice.

thereafter, did nothing. Given that there was no language regarding the duration of the obligation to pay $750 per month for rent, and no clear evidence of the parties' intent as to duration, this Master finds that the terms of the agreement are sufficiently indefinite that the contract fails.

Master's Report and Recommendation, 4/16/21, at 6-7. (Emphasis added).

The court accepted the master's decision, stating:

While the parties' testimony confirmed that they intended to create a marriage settlement agreement, the agreement lacked sufficiently clear terms to be enforceable. The Master identifies pertinent case law governing sufficiency of terms in an agreement. Upon review of the cited authority in application to this agreement, this Court concurs that the parties lacked sufficiently clear terms for enforcement including but not limited to how often payment should occur and the length of time the agreement should be in effect.

Opinion, 12/3/21, at 12.

We detect a number of errors in the foregoing analysis. First, and most importantly, we disagree with the court's (and the master's) conclusion that the agreement was unenforceable because it failed to specify "the length of time the agreement should be in effect." Opinion at 12; *see also* Master's Report at 6-7. Although the agreement did not specify a time of completion, the law is clear that this does not render the agreement unenforceable. Instead, when an agreement fails to include a time of completion, the court must infer a reasonable time, *Cashdollar*, *Scullion*, by taking into account the text of the agreement, the circumstances surrounding the agreement, the situation of the parties when the contract was made, the objects they apparently had in view, the nature of the subject matter of the agreement, and the parties' performance after the agreement. *Laudig*, *RegScan*. In this

case, there were multiple pieces of evidence from which to infer a reasonable time of completion, including: (1) the text of the agreement requiring Husband to pay "rent . . . in the sum of $750.00" to Wife "no later than the 1st of the month"; (2) Wife and Husband were separated, (3) Wife continued to live alone in the marital residence, a rental property, and needed to pay rent every month to retain her residence; and (4) following the agreement, Husband made $6,300.00 in payments to Wife, including three monthly payments of $750.00 in 2013 and six more payments between January 2014 and November 2015. The master and trial court, however, failed to consider these facts with respect to a reasonable time of completion. Their failure to take these steps, and their decision simply to declare the agreement unenforceable, runs afoul of the standards articulated in **Cashdollar**, **Laudig** and **RegScan**.

Two other errors require discussion. The first is the court's misconstruction of the master's report. The court "concur[red]" with the master's report that the agreement was unenforceable because the parties failed to agree "how often payment should occur." Opinion at 12. In fact, the master concluded that the parties **agreed** how often payment would be made. The master found that Husband agreed to make monthly payments of rent. **See** Master's Report at 6 ("it was the intent of the parties that Husband would make monthly payments in the amount of $750 per month to Wife for her rent").

Second, the master's report suggests that she found the agreement unenforceable because Wife requested enforcement of the agreement to the present day. Master's Report at 7 ("This Master finds it difficult to believe that Wife truly intended this agreement to extend to the present day . . . To the extent Wife intimated this in her testimony, this Master finds it to lack credibility"). We observe that an agreement "will not be construed to create a perpetual term unless the intention is expressed in clear and unequivocal terms." ***Hutchison v. Sunbeam Coal Corporation***, 519 A.2d 385, 390 n.5 (Pa. 1986). The present agreement does not create a perpetual term; on the contrary, it completely omits any mention of its length. We emphasize, however, that the agreement's failure to include a perpetual term does not render it unenforceable. Instead, as discussed above, the court's duty in this circumstance is to infer a "reasonable time for completion." ***Cashdollar***, 595 A.2d at 76.

For these reasons, we reject the master's recommendation and as accepted by the court, that the parties' agreement was unenforceable. The master recommended and the court accepted that Husband would make monthly payments in the amount of $750 per month to Wife for her rent. What remains to be determined is for what period of time Husband will make payments. We therefore remand this case to the trial court for it to infer a reasonable time of completion, or in other words, to supply this essential term considering the standards delineated above.

In her next argument, Wife raises a series of complaints about various procedures used during her case. First, she complains that the court violated her constitutional right of access to the courts by requiring her to pay $500.00 to obtain a hearing before the master. We disagree.

To begin, we note that Wife did not file a petition to proceed *in forma pauperis* or contend that she is financially incapable of paying this cost. Wife concedes that the cost of commencing this action via complaint of $181.75 is constitutional in order to maintain court operations. Wife's Brief at 23. In addition, Wife does not argue that the master's fee is not authorized under statute.

The only argument Wife advances is that imposition of a master's fee is unconstitutional under Article I, Section 11 of the Pennsylvania Constitution, which provides in relevant part, "All courts shall be open, and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Wife asserts that the court violated her rights under this provision by assigning her case to a master, thus giving rise to the master's fee, instead of holding the evidentiary hearing itself. According to Wife, "if there are insufficient judicial resources to permit judges to hear these cases, the burden of financing the court's operations should not be visited on family court litigants, as opposed to litigants in the civil, criminal, and orphans court divisions." Wife's Brief at 24. Although Wife believes that the use of masters

in Family Court matters is inefficient, or that litigants in other divisions of the court should pay higher costs, this hardly supports a claim that the court was not "open" to her under Article I, Section 11 or that she was deprived of "[a] remedy by due course of law." *Id.* We cannot see any reason why the master's fee is unconstitutional under Article I, Section 11.

Next, Wife argues that Husband did not appear in person at the evidentiary hearing, but the master permitted him to testify by telephone. Wife also complains that the master forced Wife to produce Husband's telephone number, and the master then called Husband *ex parte* to allow him to participate in the hearing. We do not see any objection by Wife on this subject in the hearing transcript. Accordingly, this objection is waived. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1126 (Pa. 2000) (party waives objection to perceived trial court error if she fails to raise timely objection during trial). Even if Wife did not waive this argument, it is moot in view of our decision to award a new evidentiary hearing.

Wife next argues that Husband waived all defenses by failing to file a responsive pleading to her complaint. We disagree in that the notice to defend attached to Wife's complaint, states, "If you wish to defend against the claims set forth in this Complaint, **you may, but are not required to file in writing** with the court your defenses or objections." Notice to Defend (emphasis added).

Finally, Wife argues that the court erred in denying her request for attorney fees for enforcing the parties' postnuptial agreement. We need not address this objection in view of our decision to award a new evidentiary hearing. Wife may raise her request for attorney fees on remand, and we express no view on the merits of any such request at his time, except to note that under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception. *See Mosaica Charter Sch. v. Commonwealth, Dept't of Educ.,* 813 A.2d 813, 822 (Pa. 2002).

Order denying Wife's exceptions to master's report and recommendation vacated. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2023

- 15 -