J-A15035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICHMOND & HEVENOR, ATTORNEYS AT LAW | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ERCOLE MIRACHI | |
| Appellee | No. 2102 EDA 2015 |

Appeal from the Order Dated June 5, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2013 No. 00520

BEFORE:  FORD ELLIOTT, P.J.E., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED AUGUST 05, 2016**

Appellant Richmond & Hevenor, Attorneys at Law ("R&H"), appeals from an order entered in the Philadelphia County Court of Common Pleas denying its post-trial motions and entering judgment in favor of Appellee Ercole Mirarchi following a bench trial.  We affirm.

On May 8, 2008, a commercial building owned by Mirarchi was destroyed by a fire.  Opinion, filed 10/23/2015, at 1 ("1925(a) Opinion").  Mirarchi hired R&H to represent him in a bad faith action Mirarchi filed against his insurance carrier, Seneca Insurance.  *Id.*  Mirarchi claimed that after the fire damage, the building suffered additional damage.  He claims the additional damages and resulting expenses were caused by the insurance company's failure to reimburse him until more than a year after the fire.  *Id.*

On November 1, 2009, Mirarchi entered into a Retainer Fee Agreement with R&H. 1925(a) Opinion at 1. Mirarchi made an initial payment of $4,000.00 for the retainer. *Id.* The agreement provided that R&H would bill Mirarchi $240.00 per hour and $2,500.00 per day. *Id.* at 2. The Retainer Fee Agreement was mailed to Mirarchi, but not signed by either party. *Id.* Mirarchi made payments to R&H, totaling $65,000.00 from October 29, 2009 to March 22, 2011. *Id.*

In March 2011, the parties discussed converting Mirarchi to a contingency-based agreement, due to the increasing legal and expert fees. 1925(a) Opinion at 2. The first mention of a contingency-based agreement was on March 24, 2011, when Bill Hevenor sent Kenneth Richmond an email stating:

> He was not eager to change over to a contingent fee, but now has a full explication of the *Jurenko* decision and the *State Farm* case decided a year after *Hollick* restricting punitive in Pennsylvania. 33% is not in the cards because he needs 2.5 million to be made whole for his lost business plan. So we'll see what he decides.

*Id.* (quoting Exhibit P-8).

On March 26, 2011, Mirarchi emailed his concerns about the Contingency Fee Agreement. 1925(a) Opinion at 3. On May 13, 2011, Mirarchi sent an email to Richmond stating that they needed to work out the details of the Contingency Fee Agreement. *Id.* On May 18, 2011, Mirarchi wrote:

> Per our conversations on Monday 5/16/2011, this email is to confirm that I am agreeing to sign the Contingent Fee

> Agreement with your firm, providing that all monies paid for my Consultation and Action with Seneca Insurance since inception to current date be credited back to my reserve. As you are aware from an earlier email, the amounts to be credited are listed below.

*Id.* (quoting Exh. D-1).

Richmond directed Mirarchi to read the third paragraph of the Contingent Fee Agreement, which provided:

> This agreement converts our legal representation from a fee for services rendered billed against a retainer arrangement effective April 1, 2011. All past fees paid for legal services will be credited dollar for dollar against the contingent fee recovered by [R&H] in the referenced legal proceeding.

1925(a) Opinion at 3 n.7 (quoting Ex. P-3). Mirarchi then wrote that he "was still going with the contingent fee. Use whatever is left in retainer for the financial expert."[1] *Id.* R&H mailed the Contingent Fee Agreement to Mirarchi. *Id.* Following this, R&H no longer billed Mirarchi. *Id.* Further, Mirarchi received no emails from R&H stating it was withdrawing money from his account. *Id.*

On October 18, 2011, Richmond advised Mirarchi that R&H no longer wished to represent him and that Mirarchi should obtain independent legal representation. 1925(a) Opinion at 4.

---

[1] At some point, Allan Windt was retained as an expert. The trial court states this was after conversion to a contingent fee agreement. R&H maintains Windt was retained earlier. Additional experts also were retained.

In October, 2013, Mirarchi's case against Seneca Insurance was dismissed on summary judgment. Opinion, 10/23/2015, at 4. The United States Court of Appeals for the Third Circuit affirmed. *Id.*

R&H filed an action in assumpsit against Mirarchi based upon an account stated. Mirarchi filed an Answer and New Matter, and R&H filed a reply.

Following a bench trial, the trial court entered a verdict in favor of Mirarchi and against R&H. Among other things, the trial court found the parties had entered the Contingent Fee Agreement as of May 18, 2011. Opinion, 10/23/2015, at 4. The trial court calculated the number of hours billed to Mirarchi prior to May 18, 2011, concluding R&H billed 190.4 hours, at $240.00 per hour, for Mirarchi's case prior to May 18, 2011. Mirarchi, therefore, owed $45,696.00 in attorneys fees. *Id.*

The trial court then concluded that the amount deposited into Mirarchi's retainer account, $65,000.00, minus the expert fees that had a corresponding check number, which totaled $18,807.60, was sufficient to cover the $45,696.00 in fees owed. Opinion, 10/23/2015, at 5.

R&H filed post-trial motions, which the trial court denied in an order dated June 5, 2015 and filed on June 9, 2015. In the order, the trial court also entered judgment in favor of Mirarchi. On July 2, 2015, R&H filed a notice of appeal. Both R&H and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellants raise the following claims on appeal:

- 4 -

1. Whether the trial court erred in finding that there was an enforceable contingent fee agreement between the parties despite the admission of [Mirarchi] that he had not signed a contingent fee agreement nor had he paid experts as required by the contingent fee agreement?

2. Whether the trial court erred in reforming the proposed contingent fee agreement so as to require [R&H] to pay the expert fees despite the plain language of the contingent fee agreement?

3. Whether the trial court erred in reforming paragraph three of the proposed contingent fee agreement so as to credit pre-agreement fees to [Mirarchi's] account despite unambiguous language in the agreement that legal fees paid would be credited only in the event of a contingent fee recovery?

4. Whether the trial court erred as a matter of law, in finding that the legal requirement of proof for an action on an [a]ccount [s]tated had not been satisfied because [Mirarchi] had communicated an unspecified issue with an invoice to his attorney that was never communicated to [R&H]?

5. Whether the trial court erred as a matter of law in not estopping [Mirarchi] from any dispute for an invoice where it was accepted by [Mirarchi] as accurate evidence that his attorney intended to submit to a federal court?

Appellants' Brief at 5-6.

This Court applies the following standard of review to verdicts following a bench trial:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of

- 5 -

law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Elec. Heating and Cooling LLC*, 100 A.3d 660, 664-65 (Pa.Super.2014) (quoting *Wyatt, Inc. v. Citizens Bank of Pa.*, 976 A.2d 557, 564 (Pa.Super.2009)).

Further, this Court applies the following when interpreting a contract:

The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Stephans*, 100 A.3d at 665 (quoting *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 509–10 (Pa.Super.2013)).

Moreover:

Contracts are enforceable when the parties reach a mutual agreement, exchange consideration, and have set forth the terms of their bargain with sufficient clarity. *Greene v. Oliver Realty, Inc.*, []526 A.2d 1192 ([Pa.Super.]1987). An agreement is sufficiently definite if it indicates that the parties intended to make a contract and if there is an appropriate basis upon which a court can fashion a remedy. *Id.* Moreover, when the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document.

> *Id.* (citing ***Mears, Inc. v. National Basic Sensors***, []
> 486 A.2d 1335, 1338 ([Pa.Super.]1984)).

***Stephans***, 100 A.3d at 665.

R&H first argues the trial court erred when it found the Contingent Fee Agreement enforceable even though the agreement was not signed and Mirarchi had not paid the expert fees. It argues that the expert fees drove the proposed contingent-fee agreement. Appellant's Brief at 13. R&H cites Mirarchi's email stating that he agreed to the Contingent Fee Agreement "providing that all monies paid for my [c]onsultation and [a]ction with Seneca Insurance since inception to the current date be credited back to [r]eserve." *Id.* Mirarchi was instructed to re-read paragraph three, which states that "[a]ll past fees paid for legal services will be credited dollar for dollar against the contingent fee recovered by [R&H] in the referenced legal matter." *Id.* at 13-14. R&H argues that it was error to find that the $65,000.00 in the retainer account met Mirarchi's obligation to pay all past fees for legal services. *Id.* at 14.

The trial court found:

> [R&H's] first claim is that this [c]ourt erroneously found as a matter of law that [R&H] and [Mirarchi] could enter into an unsigned Contingent Fee Agreement, which is expressly forbidden by Pennsylvania Rule of Professional Conduct 1.5(c). [R&H] further claim[s] that, if there was a Contingent Fee Agreement, [the c]ourt erroneously determined that [Mirarchi] had a meeting of the minds with respect to his payment of the expert fees, and fulfilled his obligation in paying those expert fees. As [the c]ourt found, through the evidence admitted at trial, that there was a meeting of the minds with respect to converting the [Mirarchi's] contract into a Contingent Fee Agreement, and

that all material obligations of the agreement were satisfied, this claim fails.

The Contingent Fee Agreement, which was submitted into evidence, complied with the requirements of Rule 1.5(c) in laying out the terms of the agreement in writing. It provided that the original Retainer Agreement entered into between the parties would be converted to a Contingent Fee Agreement. The Contingent Fee Agreement stated that the fee collected by [R&H] - 30% of the amount awarded - would be calculated against the full judgment entered in the matter of ***Ercole Mirarchi v. Seneca Specialty Insurance Company*** if the claim were successful. The agreement also provided that, because attorney's fees might also be awarded, attorney time records would be maintained for all past and future services rendered through the conclusion of the matter. With respect to fees, the agreement stated:

> Hereafter, the direct costs of filing, subpoenas, depositions, transcripts, copy production, telex, travel, delivery, stationary will not be separately billed and will, henceforth, be absorbed by Richmond & Hevenor within the contingent fee. Expert witness fees will be borne by Ercole Mirarchi, but, if and when a punitive damage award is made, a claim for their recovery will be submitted together with the request for attorney fees.

Exhibit P -3.

Rule 1.5(c) provides:

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the

client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

Pa.R.P.C. 1.5(c).[14]

[14] The reasoning behind requiring that contingent fee agreements be in writing is that "writings avoid misunderstandings regarding the fee and methods by which it is determined." *Eckell v. Wilson*, 597 A.2d 696, 701 (Pa.Super. 1991), citing Pa.R.P.R. 1.5, comment.

As the Contingent Fee Agreement that [R&H] and [Mirarchi] entered into comports with the requirements of Rule 1.5(c), which makes no mention of whether the agreement must be signed, this claim fails. Exhibit P-3 was introduced into evidence by [R&H], and provided that the Retainer Agreement would be converted to a Contingent Fee Agreement, effective April 1, 2011.[15] The copy introduced into evidence was not signed, and neither [R&H] nor [Mirarchi] could provide [the c]ourt with a signed copy.[16]

[15] However, [the c]ourt made a factual determination that the parties did not actually reach a meeting of the minds with respect to the Contingent Fee Agreement until May 18, 2011, and thus determined that the Contingent Fee Agreement did not become effective until that date. Exhibit D-1.

[16] Although it was never produced, there was evidence that a signed copy of the Contingent Fee Agreement existed. An email dated October 19, 2011 from [Mirarchi] to Kenneth Richmond notes:

After review, I realized we do have a second signed contract which replaced our original. It was signed in your [o]ffice [l]ibrary when we were meeting to go over the Interogs [sic] and events. A signed copy was requested [sic] by prospective firms for their evaluation to accept my [laws]uit. I will need you to please send me an electronic PDF copy as soon as you possibly can so I can submit it.

Exhibit P -13.

Contrary to [R&H's] claim that there was no evidence to show there was a meeting of the minds, [the c]ourt found that the Contingent Fee Agreement, which was sent by [R&H] to [Mirarchi] and received by him, clearly outlined the terms of the agreement, and that there were no misunderstandings regarding the terms of the agreement. Through the emails introduced into evidence, it was clear to [the c]ourt that [Mirarchi] understood all the terms of the Contingent Fee Agreement, including the provision that [Mirarchi] was required to pay all expert fees.[17]  Exhibit D-1, D-2. ***See Sun Company, Inc. v. Pennsylvania Turnpike Commission***, 798 A.2d 875, 878 (Pa.Cmwlth.Ct.1998) ("[A]ny ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable.").

> [17] [The c]ourt did find it curious that the Retainer Agreement, with which [R&H] had no dispute, was also introduced into evidence by [R&H] unsigned. Exhibit P-1.

After considering all of the evidence, [the c]ourt then made a factual determination that the parties had a meeting of the minds with respect to the Contingent Fee Agreement.  ***See City of Erie v. Fraternal Order of Police, Lodge 7,*** 977 A.2d 3, 11 (Pa.Cmwlth.Ct. 2009) ("[T]here must be a meeting of the minds on all terms of the contract," which "requires the concurrence of both parties to the agreement[.]").  [The c]ourt further determined, based on the evidence, that [Mirarchi] had fulfilled his obligations under the contract in payment of the expert fees - through the payments he made into his retainer account. ***See*** footnote 11, ***supra***.

Therefore, as [the c]ourt made a factual finding that there was a meeting of the minds by the parties to enter into the Contingent Fee Agreement, which Pa.R.P.C. 1.5(c) does not require to be signed, and [Mirarchi] fulfilled his obligations under the agreement, this claim fails.

1925(a) Opinion at 8-10.

Viewing the evidence in the light most favorable to Mirarchi as verdict winner, we find the trial court did not err. The parties discussed the Contingency Fee Agreement. After being directed to the paragraph discussing the payment of past fees, Mirarchi stated he still agreed to the agreement. Following Mirarchi's email agreeing to the terms of the Contingency Fee Agreement, R&H stopped sending invoices for its legal services. The court did not err in finding that the parties converted their arrangement to the Contingent Fee Agreement as of May 18, 2011.

R&H's next claim argues the trial court reformed the Contingent Fee Agreement because the court required R&H to pay the expert fees. R&H claims that the trial court erred in finding that the expert witness, Allan Windt, was retained after conversion to a contingent-fee agreement. Appellant's Brief at 16. It maintains Windt was retained and paid prior to May 18, 2011, and, therefore, the trial court erred in finding Mararchi had $65,000.00 in the escrow account as of May 18, 2011. *Id.* R&H claims the court erred in finding that Mirarchi complied with all terms of the Contingency Fee Agreement, even though there were expert fees outstanding at the end of the attorney-client relationship. *Id.* at 18.

The trial court found:

> [R&H's] second claim is that [the c]ourt factually found, without any evidence, that [Mirarchi] had satisfied and performed all of the unequivocal material terms of the unsigned Contingent Fee Agreement, including payment of expert fees.

- 11 -

As fact-finder, it was [the c]ourt's duty to make factual determinations:

> In a bench trial, the trial judge acts as fact-finder and has the authority to make credibility determinations and to resolve conflicts in evidence. ***Ruthrau, Inc. v. Ravin, Inc.***, 914 A.2d 880 (Pa.Super.2006). Consequently, the trial judge's findings made after a bench trial must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by competent evidence in the record. ***Levitt v. Patrick***, 976 A.2d 581 (Pa.Super.2009). . . .

***Merrell v. Chartiers Valley School Distric***t, 51 A.3d 286, 293-94 (Pa.Cmwlth.Ct.2012).

Upon review of the evidence presented in this case, [the c]ourt made a factual determination that there was a meeting of the minds in switching from the Retainer Agreement to the Contingent Fee Agreement, and that [Mirarchi] had satisfied his obligations under the Contingent Fee Agreement. [R&H] presented the written Contingent Fee Agreement, which states: "Expert witness fees will be borne by Ercole Mirarchi[.]" Exhibit P-3. The emails between [R&H] and [Mirarchi] discussing the conversion to a Contingent Fee Agreement supported the notion that [R&H] had wished to convert the contract. Exhibits P-8, P-9, P-10. The emails submitted by [Mirarchi] showed that [R&H] and [Mirarchi] ultimately had an understanding that there was a Contingent Fee Agreement between the parties. Exhibits D-1, D-2. After a determination that there was a Contingent Fee Agreement, and after reviewing the evidence concerning the payments that [Mirarchi] had made, [the c]ourt concluded that the expert fees that [Mirarchi] was responsible for under the Contingent Fee Agreement were all covered by the retainer payments he had already made to [R&H]. ***See*** Footnotes 10 and 11, ***supra***. This determination, again, was made based upon the evidence introduced by [R&H] at trial in the form of the "Time & Expenditure Data Sheets" of Richmond & Hevenor Attorneys at Law. Exhibit P-2. In review of Exhibit P-2, [the c]ourt found that [Mirarchi] was responsible only for those payments to experts that had a corresponding check number on the chart. Without a

- 12 -

check number, this Court found that there was no evidence to prove whether a payment was actually made to the expert or not. Therefore, [the c]ourt only credited the payments for expert fees detailed in footnote 11, **supra**.

Because [the c]ourt's factual determinations were based upon the evidence introduced at trial, this claim fails.

1925(a) Opinion at 10-11.

The trial court also found:

[R&H's] fourteenth claim is that [the c]ourt [il]legally and erroneously neglected the material, unconditional, specific lawful requirement that [Mirarchi] cover expert fees which was the basis, at all times from October 17, 2011, for the termination of [R&H's] representation. [R&H] further claim[s] that [Mirarchi] never produced any evidence that his obligation to pay the experts under the Contingent Fee Agreement was fulfilled. As [R&H] failed to meet its burden of proof in showing that [Mirarchi] did not pay all of the expert fees, as required by the Contingent Fee Agreement, this claim fails.

At trial, the only evidence of the fees owed to the experts, and for which [Mirarchi] was responsible, was set forth in Exhibit P-2, a "Time & Expenditure Data Sheet" created by [R&H]. [The c]ourt recognized and accepted that, under the Contingent Fee Agreement, [Mirarchi] was responsible for expert fees associated with his case. However, [R&H] failed to submit actual invoices from the experts, and also failed to submit any checks or receipts from payments to experts. Although the invoices and payments were detailed on Exhibit P-2, [the c]ourt, as fact finder, found that this alone did not prove that these invoices existed or that the payments were actually made, as this was just a document created by [R&H]. As [R&H] possessed the burden of proof, it was not [Mirarchi's] responsibility to provide proof of payment of the expert fees.

Therefore, [the c]ourt exercised its discretion in determining whether [R&H] had provided sufficient evidence of the expert fees that were payable. As [the c]ourt did not ignore this requirement in the Contingent Fee Agreement, this claim fails.

- 13 -

1925(a) Opinion at 16-17 (internal footnotes omitted).

Contrary to R&H's contention, the trial court did not find that R&H owed any expert fees. Rather, the trial court found that R&H proved it paid expert fees only where it provided a check number associated with the expenditure. Without the check number, or any other proof that the invoice had been paid, the court properly found R&H failed to prove payment. Because the amount paid to experts did not exceed the retainer amount, the trial court found Mirarchi did not owe additional expert fees. This was not error, and R&H's second claim fails.

R&H's third claim alleges the Contingent Fee Agreement provided that past fees paid for legal services would be credited only if a contingent fee was recovered. Appellant's Brief at 20. R&H claims that when Mirarchi failed to pay the experts, it was a breach of the contingent-fee agreement. *Id.* Further, R&H claims that Mirarchi's alleged failure to pay the expert fees destroyed the possibility of recovery in the bad faith action, because recovery was impossible without experts. *Id.* at 21.

The trial court concluded:

> [R&H's] sixth claim is that the proposed unsigned Contingent Fee Agreement was an executory contract requiring future compliance by [Mirarchi], and [the c]ourt erroneously concluded that [Mirarchi] had fulfilled his material obligations under the agreement. Because [R&H] provided absolutely no evidence that the Contingent Fee Agreement was intended to be an executory contract, this claim fails.
>
> There was absolutely nothing in the Contingent Fee Agreement, nor in the evidence presented at trial, that

provides proof that the Contingent Fee Agreement was intended to be an executory contract. An executory contract is a contract under which both parties have unperformed conditions or obligations that would constitute a material breach if not performed. Restatement (Second) of Contracts § 225, cmt. A condition is "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Id.* § 224.

The only mention of [Mirarchi's] obligations in the Contingent Fee Agreement was the following: "Expert witness fees will be borne by Ercole Mirarchi, but, if and when a punitive damage award is made, a claim for their recovery will be submitted together with the request for attorney fees." Exhibit P-3. The contract does not state that there is no contract unless the expert fees are paid. It merely assigns responsibility for the payment of expert fees to [Mirarchi]. In any event, [the c]ourt found that the expert fees that [Mirarchi] was responsible for were all covered by his payments into the retainer account. Therefore, if the Contingent Fee Agreement was in fact an executory contract, [Mirarchi's] obligations under the contract were satisfied.

1925(a) Opinion at 12 (footnote omitted).[2] This was not error and Appellant's third claim fails.

R&H's fourth claim asserts that it sued on an account stated and that Mirarchi accepted the accuracy of the account. Appellant's Brief at 24. It

_____

[2] R&H also maintains that there was no evidence to support the trial court's determination that Mirarchi had paid R&H approximately $46,000.00 in attorneys' fees for hours expended through May 18, 2011. Appellant's Brief at 21-22. The trial court found that, because Mirarchi's answer pled an offset, it properly found the amounts owed to R&H were offset by amounts Mirarchi paid into the retainer account, which was in the Plaintiff's exhibit. 1925(a) Opinion at 14-15; Plaintiff Trial Exh. P-2. This was not error.

claims Mirarchi retained the account without objection, claiming Mirarchi communicated his objection to his attorney, not R&H. *Id.* at 24-25.

The trial court found:

> [R&H's] final claim is that the evidence in the case demonstrated unequivocally that [R&H] proved an undisputed account stated which was acknowledged as received and reviewed by [Mirarchi's] agent/attorney who requested forbearance while the underlying case proceeded. As the evidence in this case in fact demonstrated the opposite - that [Mirarchi] did take issue with the invoice - this claim fails.
>
> In an email dated July 3, 2012, from Andrew Swain[3] to Kenneth Richmond, Mr. Swain stated:
>
>> I was working exclusively on the [summary judgment] reply motion and brief and asked [Mirarchi] as well to focus only [sic] that project, which was due and filed Monday. I have the asked [sic] the client to review your invoice to see if he identified any issues with your bill. I just returned from court and will be leaving early for the holiday. As the [summary judgment] hearing in federal court is late July, I would ask for you to file after the judge's decision if payment arrangements or plans cannot be reached. I believe any filing now against [Mirarchi] will jeopardize our settlement negotiations with Seneca in the event [summary judgment] is denied. As there is a 4[-]year claim for breach of contract[,] I do believe you have time to file. Thank you for your consideration.
>
> Exhibit D-8.
>
> In another email dated July 3, 2012, from [Mirarchi] to Andrew Swain, [Mirarchi] states: "Andrew, I reviewed part of his bill today and I do have issue with it." Exhibit D-8.

---

[3] Mr. Swain was Mirarchi's successor counsel in the matter against Seneca Insurance.

- 16 -

> As [Mirarchi] clearly did take issue with the invoice, this claim fails.

1925(a) Opinion at 19-20.

The trial court did not err. The trial court relied on two emails to find Mirarchi disputed the account: one from Mirarchi's attorney to R&H requesting that R&H not file a lawsuit until after the court ruled on the summary judgment motion and one from Mirarchi to his attorney.

R&H's final issue asserts the trial court erred as a matter of law when it found Mirarchi was not estopped from disputing the invoice. R&H claims estoppel was proper because Mirarchi accepted the invoice as evidence to submit to a federal court. Appellant's Brief at 25-26.

The court found the doctrine of judicial estoppel did not apply because there was no proof the invoice was admitted into evidence in Mirarchi's federal court proceeding. Opinion, 10/23/2015, at 19. This was not error. *See Black v. Labor Ready, Inc.*, 995 A.2d 875, 878 (Pa.Super.2010) ("judicial estoppel is properly applied only if the court concludes the following: (1) that the appellant assumed an inconsistent position in an earlier action; *and* (2) that the appellant's contention was 'successfully maintained' in that action." *In re Adoption of S.A.J.,* 838 A.2d 616, 620, 621 (Pa.2003)).

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/5/2016